Case Nos. 24-5669, 24-5743

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

JOHN DOE,

*Plaintiff-Appellee/Cross-Appellant,*

v.

JOHN BURLEW,

*Defendant-Appellant/Cross-Appellee.*

On Appeal from the United States District Court
for the Western District of Kentucky
Case No. 4:24-cv-00045 (Stivers, J.)

## Brief for Appellant/Cross-Appellee John Burlew

Matthew F. Kuhn
  *Solicitor General*
John H. Heyburn
  *Principal Deputy Solicitor General*

Office of Kentucky Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov
Jack.Heyburn@ky.gov

*Counsel for Appellant/Cross-Appellee*

## CORPORATE DISCLOSURE STATEMENT

A corporate disclosure statement is not required because Appellant/Cross-Appellee John Burlew is a state official sued in his official capacity as County Attorney for Daviess County, Kentucky. *See* Fed. R. App. P. 26.1; 6th Cir. R. 26.1.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................. i

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ................................... 1

STATEMENT OF JURISDICTION ........................................................... 2

STATEMENT OF ISSUE .......................................................................... 3

INTRODUCTION ...................................................................................... 4

STATEMENT OF THE CASE .................................................................. 6

    A.    Statutory Background. ................................................................ 6

    B.    Procedural History. ................................................................. 10

SUMMARY OF ARGUMENT ................................................................ 13

STANDARD OF REVIEW ..................................................................... 16

ARGUMENT ........................................................................................... 17

I.    Doe failed to carry his burden of establishing that SB 249 is
unconstitutional in a substantial number of its applications. ............................. 17

    A.    Doe's claims must meet the rigorous standard for facial
constitutional challenges. ................................................... 17

    B.    Doe failed to carry the heavy burden required by his facial
challenge. ............................................................................. 21

II.    SB 249 is also constitutional in its speech-related applications to Doe. ............ 26

    A.    As applied to speech, SB 249 is a disclosure requirement that
receives exacting scrutiny. ................................................. 27

    B.    The government has a substantial interest in protecting
children from sexual abuse. ............................................... 32

    C.    SB 249 furthers this interest and is narrowly tailored. ................. 35

CONCLUSION ........................................................................................ 39

CERTIFICATE OF COMPLIANCE ....................................................... 40

CERTIFICATE OF SERVICE ................................................................ 41

ADDENDUM ........................................................................................... 42

# TABLE OF AUTHORITIES

## Cases

*ACLU of Ga. v. Miller,*
  977 F. Supp. 1228 (N.D. Ga. 1997) ............................................................ 30

*ALCU v. Nat'l Sec. Agency,*
  493 F.3d 644 (6th Cir. 2007) ....................................................................... 36

*Ams. for Prosperity Found. v. Bonta,*
  594 U.S. 595 (2021) ............................................................................... 20, 27

*Ark. Writers' Project, Inc. v. Ragland,*
  481 U.S. 221 (1987) ..................................................................................... 28

*Artway v. Att'y Gen. of State of N.J.,*
  81 F.3d 1235 (3d Cir. 1996) ........................................................................ 32

*Ashcroft v. Free Speech Coal.,*
  535 U.S. 234 (2002) ............................................................................... 33, 34

*Bays v. City of Fairborn,*
  668 F.3d 814 (6th Cir. 2012) ....................................................................... 16

*Bonnell v. Lorenzo,*
  241 F.3d 800 (6th Cir. 2001) ....................................................................... 38

*Bruggeman v. Taft,*
  27 F. App'x 456 (6th Cir. 2001) ................................................................. 31

*Citizens United v. FEC,*
  558 U.S. 310 (2010) ............................................................... 15, 27, 31, 35

*Commonwealth v. Biden,*
  57 F.4th 545 (6th Cir. 2023) ....................................................................... 39

*Conn. Dep't of Pub. Safety v. Doe,*
  538 U.S. 1 (2003) ................................................................................... 22, 31

*Connection Distrib. Co. v. Reno*,
  154 F.3d 281 (6th Cir. 1998)................................................................15, 28, 33

*Cutshall v. Sundquist*,
  193 F.3d 466 (6th Cir. 1999).....................................................................31, 32

*Davis v. FEC*,
  554 U.S. 724 (2008)......................................................................................... 28

*Doe v. Reed*,
  561 U.S. 186 (2010)............................................................... 15, 27, 30, 31

*Doe v. Shurtleff*,
  628 F.3d 1217 (10th Cir. 2010)...................................................................... 30

*Duarte v. City of Lewisville*,
  858 F.3d 348 (5th Cir. 2017).......................................................................... 32

*FCC v. League of Women Voters of Cal.*,
  468 U.S. 364 (1984)......................................................................................... 29

*FEC v. Colo. Republican Fed. Campaign Comm.*,
  533 U.S. 431 (2001)......................................................................................... 25

*Felix v. Young*,
  536 F.2d 1126 (6th Cir. 1976)........................................................................ 19

*Glenn v. Holder*,
  690 F.3d 417 (6th Cir. 2012).......................................................................... 26

*Globe Newspaper Co. v. Superior Ct., Cnty. of Norfolk*,
  457 U.S. 596 (1982)......................................................................................... 33

*Gonzales v. Carhart*,
  550 U.S. 124 (2007)..................................................................................14, 24

*Hill v. Colorado*,
  530 U.S. 703 (2000)......................................................................................... 28

*Lexington H-L Servs., Inc. v. Lexington-Fayette Urb. Cnty. Gov't*,
  879 F.3d 224 (6th Cir. 2018).......................................................................... 37

*Libertarian Party of Ohio v. Husted,*
  751 F.3d 403 (6th Cir. 2014) ................................................................... 31

*Liberty Coins, LLC v. Goodman,*
  748 F.3d 682 (6th Cir. 2014) ................................................................... 16

*Litmon v. Harris,*
  768 F.3d 1237 (9th Cir. 2014) ................................................................. 32

*Mason Cnty. Med. Ass'n v. Knebel,*
  563 F.2d 256 (6th Cir. 1977) ................................................................... 16

*Mazurek v. Armstrong,*
  520 U.S. 968 (1997) ................................................................................. 16

*McCullen v. Coakley,*
  573 U.S. 464 (2014) ............................................................................ 27, 28

*McIntyre v. Ohio Elections Comm'n,*
  514 U.S. 334 (1995) ....................................................................... 15, 29, 30

*McKune v. Lile,*
  536 U.S. 24 (2002) ............................................................................. 33, 34

*Members of City Council of City of L.A. v. Taxpayers for Vincent,*
  466 U.S. 789 (1984) ................................................................................. 25

*Moody v. NetChoice, LLC,*
  144 S. Ct. 2383 (2024) .................................................................... *passim*

*New York v. Ferber,*
  458 U.S. 747 (1982) ................................................................................. 33

*Packingham v. North Carolina,*
  582 U.S. 98 (2017) ......................................................................... 33, 34, 35

*Riddle v. Mondragon,*
  83 F.3d 1197 (10th Cir. 1996) ................................................................. 32

*Rosemond v. Markham,*
  135 F. Supp. 3d 574 (E.D. Ky. 2015) ..................................................... 30

v

*Signature Mgmt. Team v. Doe,*
  876 F.3d 831 (6th Cir. 2017) .................................................................. 30

*Smith v. Doe,*
  538 U.S. 84 (2003) .......................................................................... 22, 31

*Speet v. Schuette,*
  726 F.3d 867 (2013) .............................................................................. 19

*Tennessee v. Dep't of Educ.,*
  104 F.4th 577 (6th Cir. 2024) .............................................................. 38

*Thayer v. City of Chicago,*
  110 F.4th 1040 (7th Cir. 2024) ............................................................ 26

*United States v. Allison,*
  447 F.3d 402 (5th Cir. 2006) ................................................................ 34

*United States v. Handlon,*
  97 F.4th 829 (11th Cir. 2024) .............................................................. 33

*United States v. Hansen,*
  599 U.S. 762 (2023) ......................................................... 14, 20, 21, 23

*United States v. Kebodeaux,*
  570 U.S. 387 (2013) .............................................................................. 33

*United States v. Salerno,*
  481 U.S. 739 (1987) .............................................................................. 19

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) .............................................................................. 28

*Wash. State Grange v. Wash. State Republican Party,*
  552 U.S. 442 (2008) .............................................................................. 19

*Worley v. Fla. Sec'y of State,*
  717 F.3d 1238 (11th Cir. 2013) ............................................................ 29

## Statutes

28 U.S.C. § 1292 ................................................................................................ 2

28 U.S.C. § 1331 ................................................................................................ 2

Ky. Rev. Stat. § 17.500 ...................................................................................... 8

Ky. Rev. Stat. § 17.520 .................................................................................... 38

Ky. Rev. Stat. § 17.544 ............................................................................ 7, 9, 21

Ky. Rev. Stat. § 17.546 .................................................................................... 37

Ky. Rev. Stat. § 510.155 .................................................................................. 37

Ky. Rev. Stat. § 531.335 .................................................................................. 11

Ky. Rev. Stat. § 531.340 .................................................................................. 11

Ky. Rev. Stat. § 531.350 .................................................................................. 11

## Other Authorities

Chris Hofman, CBS News, *FBI warns of predators targeting kids on social media* (May 18, 2023), https://perma.cc/K8G2-2TBZ .......................................................... 34

Gallup, *Social Media Users More Inclined to Browse Than Post Content* (Jan. 9, 2023), https://perma.cc/BUF3-PTHB ............................................................ 22

KET, Senate Chambers (Mar. 6, 2024), https://tinyurl.com/36ce97kh...................... 10

KET, Senate Judiciary Committee Meeting (Feb. 29, 2024), https://tinyurl.com/nhb9jhx9 ...................................................................... 10

Ky. General Assembly, Senate Bill 249 (2024), https://perma.cc/E5HJ-N9AK.......... 7

Pew Research Center, *70% of U.S. social media users never or rarely post or share about political, social issues* (May 4, 2021), https://perma.cc/E6TC-TJPM ........................... 22

Thorn, *Child sexual abuse material (CSAM)* (last visited, Oct. 15, 2024), https://perma.cc/ZH55-6ZTQ...................................................................... 11

## STATEMENT REGARDING ORAL ARGUMENT

Appellant/Cross-Appellee John Burlew requests that the Court hear argument. This case raises the important question of whether a duly enacted Kentucky law is likely constitutional under the First Amendment. Oral argument would assist the Court in analyzing this constitutional question.

## STATEMENT OF JURISDICTION

Plaintiff John Doe's operative complaint asserts two First Amendment claims under 42 U.S.C. § 1983. Am. Compl., R.11, PageID#50–63. The district court had jurisdiction over these claims under 28 U.S.C. § 1331. On July 12, 2024, the district court granted Doe's motion for a preliminary injunction. Mem. Op. & Order, R.26, PageID#233–46. And on July 18, 2024, the court modified that preliminary injunction so that it applied only to the parties. Mem. Op. & Order, R.27, PageID#247–53. Defendant John Burlew filed a timely notice of appeal from the court's preliminary-injunction order, as subsequently modified, on July 25, 2024. Notice of Appeal, R.29, PageID#260–61. And Doe filed a timely cross-appeal from the court's order modifying its preliminary injunction on August 15, 2024. Notice of Cross-Appeal, R.34, PageID#281–82. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF ISSUE

Whether the district court correctly entered a preliminary injunction preventing Defendant John Burlew from enforcing Kentucky's Senate Bill 249 against Plaintiff John Doe on the basis that the law is facially unconstitutional under the First Amendment.

## INTRODUCTION

Kentucky's Senate Bill 249 is a straightforward law. It requires registered sex offenders who have committed a criminal offense against a minor to display their full legal name on any social-media account they create or control. The law is therefore little different than sex-offender registry laws, whose constitutionality is not in question. While those laws allow citizens to locate sex offenders in the physical world, SB 249 serves the same function in the virtual world. It is carefully crafted to give parents the ability to identify convicted sexual predators on social media and take whatever steps they deem necessary to keep their children safe. And it does so without barring anyone from using social media or prohibiting speech in any way. The law is thus a narrowly tailored measure to protect children from sexual abuse while also respecting child sex offenders' First Amendment rights.

The district court saw things differently. Viewing the law through the lens of only the plaintiff John Doe, the court held that SB 249 is likely facially unconstitutional under the First Amendment due to its burdens on child sex offenders' ability to speak anonymously. On this basis, the court entered a preliminary injunction preventing the defendant, County Attorney John Burlew, from enforcing SB 249 against Doe. But there are several flaws in the district court's opinion that warrant vacating the preliminary injunction.

*First*, the district court failed to consider the full range of SB 249's applications, as is required when analyzing a facial challenge. Most glaringly, it overlooked the wide range of non-speech applications of the law. Most Americans use social media to *view* content, rather than *create* it. For child predators who fit this bill, SB 249 does not implicate the First Amendment at all. As applied to these individuals, the law simply allows Kentuckians to identify accounts that are controlled by child predators and take any necessary precautions, even when those predators are not using their accounts for speech. This "plainly legitimate sweep" of the law is enough on its own to foreclose Doe's facial challenge.

*Second*, even as it relates to the law's arguably speech-related applications, the record below does not support a finding of facial unconstitutionality. It was Doe's burden below to make a clear showing that SB 249 is unconstitutional in a substantial number of its applications. But Doe's preliminary-injunction record focuses almost exclusively on how the law affects his speech. This approach ignores how the Commonwealth's interest may vary among different sex offenders with different convictions. And it ignores how the constitutional question may vary depending on the type of speech—*i.e.*, personal, commercial, or political—and location of speech—*i.e.*, image- and video-focused platforms such as Snapchat or text-focused platforms such as Reddit. By focusing narrowly on SB 249's application to his speech, and ignoring the

complexities inherent in a facial challenge, Doe failed to carry his heavy burden of demonstrating his entitlement to a preliminary injunction based on a facial challenge.

*Third*, even if this case boiled down to the law's application to Doe's and similarly situated individuals' speech, SB 249 is still constitutional. SB 249 does not ban Doe from speaking. It is instead a disclosure requirement that receives intermediate, or "exacting," scrutiny to assess any incidental burden it may impose on speech. SB 249 easily passes muster under this standard because Kentucky has a substantial interest in protecting children from sexual abuse and the law furthers that interest by giving parents the ability to identify convicted child predators on social media and take any necessary precautions. Although the law doesn't need to be narrowly tailored, it is. It applies only to individuals who have committed serious sex crimes against minors, it leaves open countless avenues for anonymous speech on blogs, comment sections of news sites, and in print, among other mediums, and it does not ban any speech.

For these reasons, Doe's facial challenge must fail. The Court should therefore vacate the district court's preliminary injunction.

## STATEMENT OF THE CASE

### A.    Statutory Background.

The operative provision of Senate Bill 249 is simple: It provides that registered sex offenders who have "committed a criminal offense against a victim who is a minor shall not create or have control of an account on a social media platform unless the

account displays his or her full legal name." Ky. Rev. Stat. § 17.544(2). A first-time violation of the law is a Class A misdemeanor, and any subsequent offense is a Class D felony. Ky. Rev. Stat. § 17.544(4). This commonsense measure to combat child sexual abuse received overwhelming bipartisan support in the Commonwealth. It was unanimously passed by the General Assembly in the 2024 regular session (38-0 in the Senate and 96-0 in the House) and subsequently signed into law by Kentucky's Governor. *See* Ky. General Assembly, Senate Bill 249 (2024), https://perma.cc/E5HJ-N9AK.

The General Assembly took care in tailoring SB 249's scope. First, Kentucky law lists the specific offenses that qualify an individual as one who has committed a "criminal offense against a victim who is a minor," referred to hereinafter as "child predators" or "child sex offenders." Ky. Rev. Stat. § 17.544(2). This includes "any of the following offenses if the victim is under the age of eighteen (18) at the time of the commission of the offense":

1. Kidnapping, as set forth in KRS 509.040, except by a parent;
2. Unlawful imprisonment, as set forth in KRS 509.020, except by a parent;
3. Sex crime;
4. Promoting a sexual performance of a minor, as set forth in KRS 531.320;
5. Human trafficking involving commercial sexual activity, as set forth in KRS 529.100;
6. Promoting human trafficking involving commercial sexual activity, as set forth in KRS 529.110;

7

7.    Promoting prostitution, as set forth in KRS 529.040, when the defendant advances or profits from the prostitution of a person under the age of eighteen (18);

8.    Use of a minor in a sexual performance, as set forth in KRS 531.310;

9.    Sexual abuse, as set forth in KRS 510.120 and 510.130;

10.   Unlawful transaction with a minor in the first degree, as set forth in KRS 530.064(1)(a);

11.   Any offense involving a minor or depictions of a minor, as set forth in KRS Chapter 531;

12.   Any attempt to commit any of the offenses described in subparagraphs 1. to 11. of this paragraph;

13.   Solicitation to commit any of the offenses described in subparagraphs 1. to 11. of this paragraph; or

14.   Any offense from another state or territory, any federal offense, or any offense subject to a court martial of the United States Armed Forces, which is similar to any of the offenses described in subparagraphs 1. to 13. of this paragraph.

Ky. Rev. Stat. § 17.500(3)(a). The law therefore applies only to individuals who have committed serious crimes against minors—kidnapping, human trafficking, sexual abuse, creating or obtaining child sexual abuse material, and the like.

Second, the General Assembly also provided a precise definition of what qualifies as a "social media platform." That term is defined as:

(a) . . . a website or application that is open to the public, allows a user to create an account, and enables users to do all of the following:

1. Interact socially with other users within the confines of the website or application;

2. Construct a public or semipublic profile for the purpose of signing into and using the website or application;

3. Populate a list of other users with whom an individual shares or has the ability to share a social connection within the website or application; and

4. Create or post content viewable by others, including on message boards, chat rooms, video channels, direct or private messages, or chats, or on a landing page or main feed that presents the user with content generated by other users; and

(b) Does not include:

1. A broadband internet access service as defined by the Federal Communications Commission;

2. An electronic mail service;

3. A search engine service;

4. A cloud storage or cloud computing service;

5. An online service, application, or website in which interaction between users is limited to reviewing products offered for sale by electronic commerce or commenting on reviews posted by other users; or

6. An online service, application, or website:

a. That consists primarily of information or content that is not user-generated but is preselected by the provider; and

b. For which any chat, comments, or interactive functionality is incidental to, directly related to, or dependent upon the provision of the content described by subdivision a. of this subparagraph.

Ky. Rev. Stat. § 17.544(1). Put simply, the definition covers traditional social-media platforms—such as X, Facebook, Instagram, Snapchat, and TikTok—but not services like email, online shopping sites, blogs, or the comment sections of news sites. It also does not apply to any non-internet medium, such as print, radio, or television.

9

The legislative record reveals the General Assembly's goal in passing SB 249: protecting children from sexual abuse. The Bill's sponsor, Senator Lindsey Tichenor, explained in a committee hearing that she drafted the bill after receiving a report from a constituent that a child predator used an anonymous social-media account to attempt to gain access to an event involving children. KET, Senate Judiciary Committee Meeting (Feb. 29, 2024), https://tinyurl.com/nhb9jhx9. On the Senate floor, she described the bill as giving parents a tool to prevent sexual predators from "preying" on children while operating under pseudonyms. KET, Senate Chambers (Mar. 6, 2024), https://tinyurl.com/36ce97kh. She added that "parental monitoring is best way to combat this potential danger" and "this Bill allows for one more measure of protection to ensure minors will not be able to be accessed by sexual predators." *Id.* Senator David Yates also spoke in favor of the Bill. A former Assistant Attorney General, Senator Yates discussed the difficulties of prosecuting sex offenders who hide their identities online and emphasized how SB 249 addresses this problem. *Id.*

## B.    Procedural History.

John Doe brought this case pseudonymously. Compl., R.1, PageID#2 n.1. According to his filings in the district court, he was convicted of multiple counts of felony offenses "related to CSAM," or child sexual abuse material, and received a five-year suspended sentence. Am. Compl., R.11, PageID#53. Child sexual abuse material consists of "sexually explicit content involving a child" including "photographs, videos,

10

or computer-generated images indistinguishable from a specific minor" and has generally replaced the term "child pornography." Thorn, *Child sexual abuse material (CSAM)* (last visited, Oct. 15, 2024), https://perma.cc/ZH55-6ZTQ. Doe did not provide any other details about his convictions, such as whether he was convicted of possession or viewing child sexual abuse material, Ky. Rev. Stat. § 531.335, distribution of such material, Ky. Rev. Stat. § 531.340, producing or promoting the sale of such material, Ky. Rev. Stat. § 531.350, or something else. Regardless of his precise convictions, Doe admits that they are serious enough to subject him to SB 249's disclosure requirement.

After filing suit, Doe filed an amended complaint, Am. Compl., R.11, PageID#50–63, a motion for a preliminary injunction, PI Mot., R.12, PageID#77–101, and a motion to certify both a plaintiff class (including all registered sex offenders in Kentucky) and a defendant class (including all 120 County Attorneys in Kentucky, who have frontline responsibility for enforcing SB 249), Mot. for Class Cert., R.13, PageID#103–21. Doe's operative complaint raises two facial challenges to SB 249 under the First Amendment: one alleging that the law infringes on the right to anonymous speech and the other claiming the law is overbroad. Am. Compl., R.11, PageID#60–62. Burlew opposed Doe's motions for a preliminary injunction and class certification and moved for summary judgment. Opp'n and Mot. for Summ. J., R.19, PageID#136–65.

11

The district court issued two orders resolving these motions. First, it granted Doe's motion for a preliminary injunction and denied Burlew's motion for summary judgment as premature. Mem. Op. & Order, R.26, PageID#233–46. The court ruled that "at least some discovery may be necessary to resolve" Burlew's motion for summary judgment. *Id.* at PageID#237. But on Doe's motion for a preliminary injunction, the Court found there was enough evidence in the record to conclude that Doe was likely to succeed on the merits. The court ruled that because SB 249 "regulates all speech by Doe on social media platforms," the law is likely facially unconstitutional. *Id.* at PageID#241.

The district court also addressed the scope of its preliminary injunction. At first, the court went beyond Doe's alleged injury and preliminarily enjoined "all [120] County Attorneys in the Commonwealth of Kentucky" from "enforcing . . . KRS 17.544" against anyone in the Commonwealth. *Id.* at PageID#245–46. Less than a week later, however, the court denied Doe's motion for class certification and sua sponte narrowed its preliminary injunction to enjoin only Burlew from enforcing the law against only Doe. Mem. Op. & Order, R.27, PageID#247–53.

Motions practice and two notices of appeal ensued. After the district court's order narrowing the injunction, Doe filed an emergency motion in the district court to re-expand the injunction to apply to all 120 County Attorneys and all convicted child sex offenders in Kentucky. Emergency Mot., R.28, PageID#254–58; *see also* Mot., R.30,

PageID#262–63. Burlew subsequently filed a notice of appeal from the district court's preliminary injunction order (R.26), as later modified (R.27), thus initiating this appeal. Notice of Appeal, R.29, PageID#260–61.

Once this appeal was docketed, Doe asked this Court for the same relief he requested in the district court. CA6 R.6-1. Burlew opposed both of Doe's motions. Opp'n, R.31, PageID#265–71; CA6 R.11. And both this Court (CA6 R.15-2) and the district court (Order, R.37, PageID#296) denied Doe's requests for an expanded injunction. In the midst of these "emergency motions," Doe also filed a notice of cross-appeal of the district court's preliminary injunction, presumably to seek the same expanded relief he (unsuccessfully) sought in his emergency motions. Notice of Cross-Appeal, R.34, PageID#281.

## SUMMARY OF ARGUMENT

**I.** Doe failed to carry his burden of demonstrating his entitlement to a preliminary injunction. Because he alleges SB 249 is facially unconstitutional, he was required to catalogue all the law's applications and demonstrate that the unconstitutional ones substantially outweigh the constitutional ones. *See Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024). This is an exceptionally high bar. And Doe fell woefully short of meeting it.

By focusing on how the law applies to his speech, Doe ignored several categories of the law's application. First and foremost, he failed to recognize that the law has a

13

wide range of non-speech-related applications. Most Americans use social media simply to view, rather than post, content. SB 249 applies to child predators who use social media in this way. It thus allows parents and children to block or avoid child predators even if those predators are not using their social-media accounts for speech. Because the law "encompasses a great deal of nonexpressive conduct," Doe's facial challenge must fail. *United States v. Hansen*, 599 U.S. 762, 782 (2023).

Doe also failed to grapple with how the constitutional analysis could differ between individuals, platforms, and types of speech. The Commonwealth's interest may vary depending on whether an individual is convicted of, for example, distributing CSAM, harassment, rape, or large-scale human trafficking. The burden on speech (assuming there is any), may also vary depending on whether an individual primarily uses image-focused applications like Snapchat and TikTok, or text-focused ones like Reddit and LinkedIn. Finally, the burden could also vary depending on whether the individual is primarily engaged in personal, commercial, or political speech, or some combination of the three. To be sure, the law could be "open to a proper as-applied challenge in a discrete case." *Gonzales v. Carhart*, 550 U.S. 124, 168 (2007). But by choosing to bring a facial challenge, Doe was required (but failed) to do the hard work of showing how a substantial number of these applications are unconstitutional.

**II.** The Court need not proceed any further to reject Doe's facial challenge. But even as applied to Doe's speech, the law is constitutional. SB 249 is a disclosure

14

requirement that receives a form of intermediate scrutiny called "exacting scrutiny." *Doe v. Reed*, 561 U.S. 186, 196 (2010) (citations omitted). Courts must uphold laws under this standard so long as the government demonstrates "a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." *Citizens United v. FEC*, 558 U.S. 310, 366–67 (2010) (citation omitted). In an effort to increase the level of scrutiny on SB 249, Doe and the district court misread *McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995). But as the author of that decision later explained, *McIntyre* "posited no such freewheeling right" "to anonymous speech." *Reed*, 561 U.S. at 218 n.4 (2010) (Stevens, J., concurring). And, in any event, it set out the same exacting-scrutiny standard as is used in disclosure-requirement cases.

SB 249 easily passes muster under exacting scrutiny. There is no debate that "[t]he goal of preventing the sexual exploitation of children undoubtedly is a compelling and important one." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 290 (6th Cir. 1998). And although SB 249 need not be narrowly tailored to this interest to pass exacting scrutiny, it is. It is a mere disclosure requirement that does not ban any speech. It applies only to individuals who have committed serious offenses against minors, not all sex offenders. It preserves a wide range of mediums where child predators can engage in speech without disclosing their names, including email, blogs, comment sections of news sites, as well as print, TV, radio, and in-person communications. It also fills a void left by Kentucky's other laws, which focus on after-the-fact punishment of sex-

offenders. SB 249, on the contrary, gives parents the tools to prevent sexual abuse before it ever happens.

## STANDARD OF REVIEW

In the district court, Doe bore the burden of making a "*clear showing*" that he was entitled to the "extraordinary and drastic remedy" of a "preliminary injunction." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted). On appeal, "the standard of review for a district court decision regarding a preliminary injunction with First Amendment implications is de novo." *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012). To be sure, an "appeal from the denial or granting of a preliminary injunction is" typically "limited to a determination of whether the District Court abused its discretion." *Mason Cnty. Med. Ass'n v. Knebel,* 563 F.2d 256, 260–61 (6th Cir. 1977). But "the likelihood of success on the merits is a legal question" that is reviewed de novo. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014). And "[i]n First Amendment cases," such as this, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits" because "the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the [state action]." *Bays*, 668 F.3d at 819 (citation omitted).

16

# ARGUMENT

## I. Doe failed to carry his burden of establishing that SB 249 is unconstitutional in a substantial number of its applications.

Doe bore the burden of establishing his entitlement to a preliminary injunction. But he failed to demonstrate that SB 249 is unconstitutional in a substantial number of its applications. Even if the law were unconstitutional as applied to Doe (it is not, *see infra* § II), Doe's failure to explore the full range of SB 249's applications dooms his facial claim.

### A. Doe's claims must meet the rigorous standard for facial constitutional challenges.

Two threshold points bear emphasis: (i) Doe brings a facial challenge to SB 249, (ii) so it was his burden to show that the law is unconstitutional not just as it applies to him, but in a substantial number of its applications.

**1.** As the district court recognized, Doe brings a facial challenge to the SB 249. Mem. Op. & Order, R.26, PageID#238 n.2 ("While the prayer for relief in this count nominally asserts an as-applied challenge, it does not appear to be supported by the allegations preceding it."). Both of his claims attack SB 249 in facial terms. Count I, which alleges a violation of the right to anonymous speech, alleges that SB 249 "deprives Plaintiff and others similarly situated of the right to engage in protected anonymous speech on social media platforms." Am. Compl. R.11, PageID#60. And "[b]ecause of these infirmities," Doe alleges "the Statute is *facially unconstitutional*." *Id.*

17

(emphasis added). Count II is a First Amendment overbreadth claim, and likewise alleges that "the Statute is *facially overbroad* and unconstitutional." *Id.* at PageID#62 (emphasis added).

Doe's decision to bring a facial challenge appears to have been a strategic one to obtain a state-wide injunction. Doe's motion to certify plaintiff and defendant classes depended on his suit being "a facial challenge to the Statute." Mot. for Class Cert., R.13, PageID#114–15. He argued that the proposed classes met Rule 23(a)(2)'s commonality requirement because "the same factual and legal questions . . . are shared by each member of the class, and [the plaintiffs'] theories of the Statute's unconstitutionality *are the same*." *Id.* at PageID#108 (emphasis added). And he acknowledged that "[a]bsent [this] defendant class," which hinged on his "facial challenge to the Statute," any "relief would only be binding on Defendant Burlew." *Id.* at PageID#111–12. Doe's post-injunction requests for a state-wide injunction also turned on the facial nature of his claims. Emergency Mot. to Modify Preliminary Injunction, R.28, PageID#255 (arguing that "injunctive relief can and should extend beyond the named parties even absent class certification" "in the context of First Amendment overbreadth claims").

Doe's claims cannot be an as-applied challenge, moreover, because he has not provided the necessary information to support such a challenge. In his complaint, he states only that he was convicted in 2015 of felony offenses relating to CSAM. Am. Compl., R.11, PageID#53. But he does not provide any other information about these

18

offenses, including the underlying facts of those convictions, how many convictions he received, and the specific statutes he was convicted under. These details are necessary to pursue an as-applied challenge. But "the record" he has developed thus far is "inadequate to determine . . . whether enforcement of the [Act] would unduly infringe on the enjoyment of [his] right to free expression." *Felix v. Young*, 536 F.2d 1126, 1136 (6th Cir. 1976).

**2.** Doe's "decision" "to litigate" this suit "as [a] facial challenge[]" "comes at a cost." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024). Facial challenges "'often rest on speculation' about the law's coverage and its future enforcement" and thus "'threaten to short circuit the democratic process' by preventing duly enacted laws from being implemented in constitutional ways." *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008)). That is why the Supreme Court has "made facial challenges hard to win." *Id.*; *see also Speet v. Schuette*, 726 F.3d 867, 872 (2013) ("Sustaining a facial attack to the constitutionality of a state law, as the district court did, is momentous and consequential.").

This "is true even when a facial suit is based on the First Amendment, although then a different standard applies." *Moody*, 144 S. Ct. at 2397. In other contexts, a plaintiff bringing a facial challenge must "establish that no set of circumstances exists under which the [law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "In First Amendment cases, however," the Supreme Court has "substituted a less

19

demanding though still rigorous standard." *Moody*, 144 S. Ct. at 2397. Courts must assess whether "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (citation omitted). Under this test, "the law's unconstitutional applications [must] *substantially outweigh* its constitutional ones" for a facial challenge to succeed. *Moody*, 144 S. Ct. at 2397 (emphasis added).

The Supreme Court has established a two-step process for analyzing facial challenges under the First Amendment. "The first step . . . is to assess the state laws' scope." *Moody*, 144 S. Ct. at 2398. The reviewing court must ask "[w]hat activities, by what actors, do[es] the law[] prohibit or otherwise regulate?" *Id.* Put another way, the court "must 'determine what [the law] covers.'" *Id.* (quoting *United States v. Hansen*, 599 U.S. 762, 770 (2023)). In this case, that means cataloguing the universe of individuals covered by SB 249, the types of speech covered, the social-media platforms covered, and whether the law has any non-speech applications. The second step "is to decide which of the laws' applications violate the First Amendment, and to measure them against the rest." *Id.* This means the court "must explore the laws' full range of applications—the constitutionally impermissible and permissible both—and compare the two sets." *Id.* To do this, the court must "ask[], as to every covered" person and type of speech, whether the law "unduly burden[s] expression." *Id.*

This is, of course, a "rigorous" standard. *Moody*, 144 S. Ct. at 2397. But the "need for [Doe] to carry [his] burden on those issues is the price of [his] decision to challenge the law[] as a whole." *Id.* at 2409.

### B.    Doe failed to carry the heavy burden required by his facial challenge.

Despite deciding to bring a facial challenge, Doe "did not address the full range of activities the law[] cover[s], and measure the constitutional against the unconstitutional applications," as binding precedent requires. *Moody*, 144 S. Ct. at 2397–98. Instead, Doe's preliminary-injunction record focuses almost exclusively on some of the law's applications to himself and ignores much of its "plainly legitimate sweep." *Hansen*, 599 U.S. at 770. Doe's facial challenge cannot be sustained given these major shortcomings in the record.

**1.** Doe's most glaring omission is that he failed to grapple with the SB 249's non-speech-related applications. Following Doe's lead, the district court made the same error. The court noted that SB 249 requires Doe to use his full legal name "for all *communications* on social media." Mem. Op. & Order, R.26, PageID#242 (emphasis added). But the law is broader than that. It requires covered individuals to display their full legal name on all accounts that they "creat[ed]" or "control," regardless of whether they use those accounts for speech. Ky. Rev. Stat. § 17.544(2).

Most people do not use social media for speech. Surveys show that "less than half [of U.S. adults] who have accounts [with popular social media platforms] . . . post

21

their own content." Gallup, *Social Media Users More Inclined to Browse Than Post Content* (Jan. 9, 2023), https://perma.cc/BUF3-PTHB. And when it comes to core political speech, approximately "70% of social media users say they never (40%) or rarely (30%)" "post or share things about political or social issues in social media." Pew Research Center, *70% of U.S. social media users never or rarely post or share about political, social issues* (May 4, 2021), https://perma.cc/E6TC-TJPM. SB 249 applies to these non-posting individuals. And these applications still serve a valuable purpose of allowing parents and children to avoid any contact with accounts controlled by sexual predators even when those individuals haven't specifically targeted their children.

In this way, SB 249 is little different than sex-offender registry laws. These laws are widespread: "[E]very State, the District of Columbia, and the Federal Government had enacted some variation of Megan's Law," which requires "mandatory registration of sex offenders and corresponding community notification." *Smith v. Doe*, 538 U.S. 84, 89–90 (2003). And they are constitutional. *See, e.g., Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003) (upholding Connecticut's law providing that "the registry information of *all* sex offenders—currently dangerous or not—must be publicly disclosed"). Like sex-offender registry laws, the "purpose and the principal effect of [SB 249 is] to inform the public for its own safety" of sex offenders' whereabouts. *Smith*, 538 U.S. at 99. That SB 249 does so with respect to sex offenders' virtual, as opposed to physical, location is not constitutionally significant.

22

Most of the law's applications are therefore constitutional because they "do[] not implicate the First Amendment at all." *Hansen*, 599 U.S. at 782. Where, as here, a law "encompasses a great deal of nonexpressive conduct," that is enough to defeat a facial challenge. *Id.*

**2.** But there's more. On top of overlooking SB 249's non-speech applications, Doe and the district court gave short shift to a wide swath of the law's other applications.

For starters, Doe and the district court glossed over SB 249's applications to persons other than Doe. In his briefing below, Doe focused on his own speech, not that of others. *See, e.g.*, Mot. for Preliminary Injunction, R.12, PageID#85 ("The Statute wholly forecloses the ability of *Plaintiff* to engage in protected First Amendment activity." (emphasis added)). The district court followed suit and focused on Doe's speech. Mem. Op. & Order, R.26, PageID#241 ("As written, however, KRS 17.544 regulates all speech *by Doe* on social media platforms—not just the alleged harms or risks identified by Burlew." (emphasis added)).

Doe arguably spent one paragraph in his preliminary-injunction motion talking about the SB 249's effect on other sex offenders. Mot. for Preliminary Injunction, R.12, PageID#95–96. But aside from acknowledging that the law applies to child predators who have been convicted of a range of offenses, Doe does not grapple with how these differences may affect the constitutional analysis. For Doe to carry his burden for a

23

preliminary injunction based on a facial challenge, he should have engaged with how the Commonwealth's interest may vary depending on the offense committed by the sex offender—whether that involves CSAM, sexual harassment, human trafficking, or rape. But Doe did not introduce evidence (or even brief) how the law would apply to different offenders. In siding with Doe, the district court's opinion suffers from the same shortcoming.

Doe and the district court also failed to consider the different types of speech that occur on the different covered platforms. "The online world is variegated and complex, encompassing an ever-growing number of apps, services, functionalities, and methods for communication and connection." *Moody*, 144 S. Ct. at 2398. This raises a host of questions relating to this case. For example, does the Commonwealth have a stronger interest when the law is applied to image- and video-focused platforms, like Snapchat and Instagram, as opposed to text-focused platforms, like LinkedIn or Reddit? And relatedly, does the burden (if any) on protected speech depend on the platform and type of content? The analysis may also be different depending on the type of speech at issue—political, social, or commercial. The law is of course "open to a proper as-applied challenge in a discrete case." *Gonzales v. Carhart*, 550 U.S. 124, 168 (2007). But the point here is that Doe didn't do the work necessary to sustain his facial challenge.

**3.** Because the district court did not survey the full extent of SB 249's applications, it could not even begin to conduct step two: comparing the law's constitutional applications to its unconstitutional ones. To be sure, the law's application to Doe may be part of the analysis—but only a small part. Even if this application were unconstitutional (it is not, *see infra* § II), "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.* at 801. Even if the law is unconstitutional as to some *speakers*, or speech on some *platforms*, or some *types of speech*, that does not mean the law is facially unconstitutional.

Doe's failure to engage with nearly all of SB 249's applications is fatal to his facial claims. Put another way, he simply did not "lay the groundwork for [his] facial overbreadth claim[s]." *FEC v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431, 456 n.17 (2001). By following Doe's lead, the district court's preliminary-injunction order cannot be sustained. That order was premised on Doe being likely to succeed on his facial constitutional claims. But as discussed above, Doe did not even begin to make the rigorous showing required to sustain such claims. The non-speech applications alone are enough to sustain the law. And Doe's failure to present evidence of the law's

25

additional applications precluded him from making a showing that the law is unconstitutional in those applications.

These flaws are enough to vacate the preliminary injunction. *See, e.g.*, *Glenn v. Holder*, 690 F.3d 417, 422 (6th Cir. 2012) ("Without an allegation [that others are affected by the statute's relevant provisions], a court cannot conclude that [the relevant statute] threatens to undermine a substantial number of [their rights]."); *Thayer v. City of Chicago*, 110 F.4th 1040, 1043 (7th Cir. 2024) ("[O]ur three plaintiffs have not even *argued* that most of the list's categories are invalid, let alone that the problematic items are substantial in relation to the valid ones. That knocks out any entitlement to challenge this list on its face.").

## II.    SB 249 is also constitutional in its speech-related applications to Doe.

The Court can stop there. As discussed above, most of SB 249's applications are constitutional because they do not implicate the First Amendment at all. And if that weren't enough, the district court's preliminary injunction cannot be sustained because the court bypassed large swaths of the law's potentially speech-related applications. These shortcomings are fatal to Doe's facial challenge. But even if they were not, the law's arguably speech-related applications to Doe (and similarly situated individuals) are constitutional too.

26

### A.      As applied to speech, SB 249 is a disclosure requirement that receives exacting scrutiny.

For convicted sex offenders against minors who use social media for speech, the requirement to disclose one's name is just that—a disclosure requirement. It does not prohibit any speech. Under a long line of Supreme Court precedents, disclosure requirements, like that in SB 249, receive "exacting scrutiny."

**1.** The Supreme Court has recognized that the required disclosure of one's name "is not a prohibition on speech, but instead a *disclosure* requirement." *Doe v. Reed*, 561 U.S. 186, 196 (2010); *see also Citizens United v. FEC*, 558 U.S. 310, 366 (2010) ("[D]isclosure requirements may burden the ability to speak, but they . . . do not prevent anyone from speaking." (citation omitted)). Although such disclosure requirements are "subject to review under the First Amendment," they are not subject to strict scrutiny, even in the core election context. *Reed*, 561 U.S. at 194. Instead, in "a series of precedents considering First Amendment challenges to disclosure requirements," the Supreme Court "reviewed such challenges under what has been termed 'exacting scrutiny.'" *Id.* at 196 (collecting cases).

This standard "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." *Citizens United*, 558 U.S. at 366–67 (citation omitted). The government need not "adopt 'the least restrictive means of achieving a compelling state interest,'" as it must under the strict-scrutiny standard. *Bonta*, 594 U.S. at 607 (quoting *McCullen v. Coakley*, 573 U.S. 464, 478 (2014)).

Rather, it must show just "a relevant correlation or substantial relation between the governmental interest and the information required to be disclosed." *Davis v. FEC*, 554 U.S. 724, 744 (2008) (citation omitted).

The General Assembly's purpose in adopting SB 249 confirms that the law does not receive strict scrutiny. Whether a law "is content-based or content-neutral" determines the level of scrutiny it receives. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 290 (6th Cir. 1998). And the "principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989). As discussed above, *supra* at 10, the General Assembly passed SB 249 to give parents and law enforcement an additional tool to protect children from sexual predators. Doe offered no evidence that the law was passed "because of disagreement with [any] message" that child sex offenders "convey[]." *Hill v. Colorado*, 530 U.S. 703, 711 (2000).

How one determines whether SB 249 applies to them is also relevant. There is no need to "examine the content of the message that is conveyed" to determine whether disclosure is required under SB 249. *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 230 (1987). That is accomplished solely by reference to the offender's convictions and the platform on which he has created or controls an account. Accordingly, SB 249 lacks one of the tell-tale signs that a law is content based. *See, e.g.*, *McCullen*, 573 U.S. at 479 ("The Act would be content based if it required 'enforcement authorities' to 'examine

the content of the message that is conveyed to determine whether' a violation has occurred." (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984)).

**2.** Doe's and the district court's insistence that this case is about the "right to engage in anonymous speech" does not compel heightened scrutiny. Mem. Op. & Order, R.26, PageID#239; Mot. for Preliminary Injunction, R.12, PageID#81.

The leading Supreme Court case on anonymous speech is *McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995). But *McIntyre* merely recognized that one's "decision to remain anonymous . . . is *an aspect* of the freedom of speech protected by the First Amendment." *Id.* at 342 (emphasis added). Under this view, the Supreme Court held that an Ohio law barring *anyone* from distributing campaign literature without affixing their name and address to the publication impermissibly burdened the freedom of speech. *Id.* at 338. This was a "narrow decision that expressly disavowed application to other forms of media," *Worley v. Fla. Sec'y of State*, 717 F.3d 1238, 1254 (11th Cir. 2013), and was limited to "only written communications and, particularly, leaflets of the kind Mrs. McIntyre distributed," *McIntyre*, 514 U.S. at 338 n.3; *see also id.* at 358 (Ginsburg, J., concurring) ("We do not thereby hold that the State may not in other, larger circumstances require the speaker to disclose its interest by disclosing its identity.").

Importantly, *McIntyre* did not recognize a freestanding right to anonymous speech. The author of *McIntyre*, Justice Stevens, later explained that the decision "posited no such freewheeling right" "to anonymous speech," and that "the freedom

29

of speech" "is the right to speak, not . . . the right to speak anonymously." *Reed*, 561 U.S. at 218 n.4 (Stevens, J., concurring). Other members of the Supreme Court have been similarly vocal in disclaiming a freestanding constitutional right to anonymous speech. *See also McIntyre*, 514 U.S. at 374 (Scalia, J., dissenting) (rejecting a "*constitutional entitlement* to anonymous [speech]"). Even still, *McIntyre* itself noted that the appropriate standard to apply is "exacting scrutiny." *Id.* at 347. So *McIntyre* is not the silver bullet that Doe asserts.

The district court's other favored cases on anonymous speech do not suggest a more stringent standard of review. Only one is from this Court. But far from establishing an unassailable right to anonymous speech, *Signature Management Team v. Doe* established a "presumption in favor of *unmasking* anonymous defendants when judgment has been entered for a plaintiff." 876 F.3d 831, 837 (6th Cir. 2017) (emphasis added). To be sure, this is not a case about the disclosure of judicial records. But *Signature Management Team* is nevertheless instructive in demonstrating that the right to anonymity will vary depending on the circumstances. The rest of the district court's anonymous-speech cases are either district-court cases, out of circuit, or both. Mem. Op. & Order, R.26, PageID#239 (citing *ACLU of Ga. v. Miller*, 977 F. Supp. 1228, 1232 (N.D. Ga. 1997); *Rosemond v. Markham*, 135 F. Supp. 3d 574, 586 (E.D. Ky. 2015); *Doe v. Shurtleff*, 628 F.3d 1217, 1222 (10th Cir. 2010)).

30

The Court cannot consider Doe's interest in anonymity, moreover, without also considering his status as a convicted sex offender. A loss of some degree of anonymity is the price sexual predators pay for their offenses. Sex-offender registries, which require the public disclosure of a person's name, conviction, and address, are constitutionally permissible. *See Conn. Dep't of Pub. Safety*, 538 U.S. at 4; *Smith*, 538 U.S. at 89. "The Constitution," therefore, "does not provide [sex offenders] with a right to keep [their] registry information private." *Cutshall v. Sundquist*, 193 F.3d 466, 481 (6th Cir. 1999); *Bruggeman v. Taft*, 27 F. App'x 456, 458 (6th Cir. 2001) ("[T]here is no liberty interest in being free from having to register as a sex offender or from public disclosure of registry information."). Similarly, the Constitution does not provide child predators with an unrestricted right to communicate anonymously on social media.

In sum, restrictions on anonymous speech in this context are not the constitutional red line that Doe and the district court make them out to be. This Court and the Supreme Court have upheld numerous restrictions on anonymous speech, even in the core political-speech context, under exacting scrutiny. *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412–21 (6th Cir. 2014) (holding that Ohio law requiring "circulators of candidacy or nomination petitions to disclose the name and address of the person employing them, if any," meets exacting scrutiny); *Reed*, 561 U.S. at 191 ("disclosure of referendum petitions . . . does not as a general matter violate the First Amendment"); *Citizens United*, 558 U.S. at 366 (upholding federal "disclaimer and

31

disclosure provisions" requiring that TV "electioneering communications funded by anyone other than a candidate must include a disclaimer" stating who "is responsible for the content of th[e] advertising" (citation omitted)). And such restrictions can certainly be upheld where, as here, there is an exceptionally compelling governmental interest and requisite fit. *See infra* § II.B.

**3.** That the law applies to child predators, and child predators alone, also does not increase the applicable scrutiny. It is well established that "[c]onvicted sex offenders are not a suspect class." *Cutshall*, 193 F.3d at 482; *see also, e.g.*, *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996) ("[W]e reject plaintiffs' contention that sex offenders constitute a suspect class."); *Litmon v. Harris*, 768 F.3d 1237, 1244 (9th Cir. 2014) ("[S]ex offenders do not comprise a suspect class."); *Duarte v. City of Lewisville*, 858 F.3d 348, 354 n.4 (5th Cir. 2017) ("[S]ex offenders are not a suspect class."). Nor are they even a "quasi-suspect class." *Artway v. Att'y Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996). There is thus no reason to increase the level of scrutiny on SB 249 simply because it applies only to those convicted of sexual offenses against minors.

## B.    The government has a substantial interest in protecting children from sexual abuse.

In the district court, Doe conceded that "the protection of children is at least a significant governmental interest," but he wasn't sure it is a "compelling" one. Mot. for Preliminary Injunction, R.12, PageID#91. This Court and the Supreme Court, however, have made clear that the "goal of preventing the sexual exploitation of children

undoubtedly is a compelling and important one." *Reno*, 154 F.3d at 290; *New York v. Ferber*, 458 U.S. 747, 757 (1982) ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."); *Packingham v. North Carolina*, 582 U.S. 98, 106 (2017) ("[I]t is clear that a legislature 'may pass valid laws to protect children' and other victims of sexual assault 'from abuse.'" (quoting *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002)); *Globe Newspaper Co. v. Superior Ct., Cnty. of Norfolk,* 457 U.S. 596, 607 (1982) ("[T]he . . . interest [of] safeguarding the physical and psychological well-being of a minor . . . is a compelling one."). Indeed, this goal is so compelling that "the government not only is permitted but perhaps *obliged* to pursue" it. *Reno*, 154 F.3d at 290 (emphasis added). And it is no less compelling "when the laws have operated in the sensitive area of constitutionally protected rights." *Ferber*, 458 U.S. at 757.

This interest is only strengthened, moreover, by sex offenders' proclivity for recidivism. As the Supreme Court has recognized, when "convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *McKune v. Lile*, 536 U.S. 24, 33 (2002) (plurality opinion); *see also United States v. Kebodeaux*, 570 U.S. 387, 395–96 (2013) ("There is evidence that recidivism rates among sex offenders are higher than the average for other types of criminals."). This problem is particularly pronounced for child predators. *United States v. Handlon*, 97 F.4th 829, 832 (11th Cir. 2024) ("As Congress has found and

33

as we have discussed, child sex offenders have appalling rates of recidivism." (citation omitted)); *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.").

The government's interest is also particularly strong when it comes to the internet. "[T]he Internet offers an unprecedented degree of anonymity and easily permits a would-be molester to assume a false identity." *Packingham*, 582 U.S. at 118 (Alito, J., concurring). This unprecedented anonymity is why, according to the FBI, "[s]ocial media and online applications have become the primary tool for subjects to identify, groom and sexually exploit children." Chris Hofman, CBS News, *FBI warns of predators targeting kids on social media* (May 18, 2023), https://perma.cc/K8G2-2TBZ. As Justice Alito has explained, "the Internet provides previously unavailable ways of communicating with, stalking, and ultimately abusing children. An abuser can create a false profile that misrepresents the abuser's age and gender. The abuser can lure the minor into engaging in sexual conversations, sending explicit photos, or even meeting in person." *Packingham*, 582 U.S. at 111–12 (Alito, J., concurring).

In sum, the "sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people." *Ashcroft*, 535 U.S. at 244; *McKune*, 536 U.S. at 32 (plurality opinion) ("Sex offenders are a serious threat in this Nation."). So the

34

"government, of course, need not simply stand by and allow these evils to occur." *Packingham*, 582 U.S. at 106.

### C.    SB 249 furthers this interest and is narrowly tailored.

SB 249 furthers the government's compelling interest in protecting children from sexual abuse in several ways: it serves as a deterrent, as sex offenders are less likely to reoffend when they cannot hide behind pseudonyms; it gives parents and children a greater ability to *prevent* sexual abuse in the first place; and it provides law enforcement with another tool to do the same. Although not required under the exacting-scrutiny standard, SB 249 furthers the Commonwealth's interests in a narrowly tailored way. Specifically, five key limitations demonstrate the law's narrow tailoring.

*First*, as a "disclosure requirement[]," SB 249 "do[es] not prevent anyone from speaking." *Citizens United*, 558 U.S. at 366. It is therefore nothing like the law invalidated in *Packingham*, which "foreclose[ed] access to social media altogether" for registered sex offenders. 582 U.S. at 108. *Packingham* specifically acknowledged that the "opinion should not be interpreted as barring a State from enacting more specific laws than the one at issue." *Id.* at 107. To be sure, *Packingham* drew a line in the sand that States cannot *ban* all sex offenders from *using* social media. But SB 249 does not come close to transgressing this line.

Doe's personal choice not to use social media does not turn SB 249's disclosure requirement into a ban. To "allege a sufficient injury under the First Amendment, a

plaintiff must establish that he or she is regulated, constrained, or compelled directly by the government's actions, instead of by his or her own subjective chill." *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 661 (6th Cir. 2007) (Batchelder, J.). Therefore, Doe cannot use his voluntary decision to forgo posting on social media sites, Am. Compl., R.11, PageID#55, to support his claim that Kentucky is "wholly foreclos[ing]" his ability to exercise his ability to speak, Mot. for Preliminary Injunction, R.12, PageID#85.

*Second*, SB 249 applies only to sex offenders who have committed criminal offenses against minors, not all sex offenders. Both Doe and the district court at times mischaracterized the law as "regulat[ing] all communications on social media platforms by persons on the Kentucky Sex Offender Registry." Mem. Op. & Order, R.26, PageID#241; Mot. for Preliminary Injunction, R.12, PageID#95 ("The Statute broadly applies to all individuals who are required to register under [the Sex Offender Registry Act] in Kentucky."). But the law is narrower—intentionally so. It lays out the specific offenses that qualify someone for coverage under the law and requires that the victim of those offenses be a minor. These are all serious offenses, moreover, and include kidnapping, sex crimes, and promoting a sexual performance of a minor. This list thus ensures that the law applies only to those sex offenders who pose the greatest risk to children.

*Third*, SB 249 is limited to a tightly defined group of social-media applications. The law therefore "preserves a wide range of alternative methods for [anonymous]

expression" for Doe and other child predators. *Lexington H-L Servs., Inc. v. Lexington-Fayette Urb. Cnty. Gov't*, 879 F.3d 224, 235 (6th Cir. 2018). For example, they can write pamphlets, pass out leaflets, post in the comment section of news sites, write blog posts and emails, and speak to their fellow citizens in person, on TV, on the radio, and on podcasts—all without disclosing their name and without violating the terms of SB 249. There is good reason to restrict child predators' anonymous speech on social media but not other forums: that is where the danger to children is the greatest. So rather than prohibiting child predators from speaking anonymously in *any* forum, the General Assembly carefully tailored SB 249 to the forum where the danger is most acute.

*Fourth*, SB 249 fills a void left by Kentucky's other laws. The district court cites two laws—Ky. Rev. Stat. § 17.546 and Ky. Rev. Stat. § 510.155—that in its view "better serve Kentucky's interest in protecting children." Mem. Op. & Order, R.25, PageID#243. But under exacting scrutiny, a law need not be the least restrictive way to address a problem. In any event, both Sections 17.546 and 510.155 are after-the-fact punishments for individuals who use the internet to prey on children. To be sure, these laws are vital to deterring and punishing sex crimes against minors. But even with these laws on the books, the sexual abuse of children persists to an unacceptable degree. That is why SB 249 is so important. Rather than punishing sexual abuse after it happens, it provides parents and law enforcement the tools to help ensure that such abuse never happens in the first place.

37

*Finally*, SB 249 applies only while an individual is required to register as a sex offender. Although those who commit the most serious offenses or combination of offenses must register for life, others need only do so for 20 years. Ky. Rev. Stat. § 17.520. As soon as one is no longer a registered sex offender, SB 249 no longer applies.

*        *        *

The likelihood-of-success factor is the whole ball game on appeal. The district court held that it was "mandated" to find that Doe would suffer irreparable harm because it ruled that he was likely to succeed on the merits. Mem. Op. & Order, R.26, PageID#244 (quoting *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001)). And it "decline[d] to consider the remaining factors" because "[t]he first two preliminary injunction factors both strongly weigh[ed] in favor of granting the preliminary injunction." *Id.* Accordingly, a ruling that the district court erred in its analysis of the merits is enough to vacate the preliminary injunction.

In any event, the remaining factors all weigh in favor of vacating the injunction. The irreparable-harm factor favors Burlew because "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 613 (6th Cir. 2024) (citation omitted). "The two remaining preliminary injunction factors—whether issuing the injunction would harm others and where the public interest lies—merge when the

government is the defendant." *Commonwealth v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023). And "the public interest lies in a correct application' of the law." *Id.* (citation omitted). Here, that means allowing Burlew to enforce a duly enacted and constitutional act of the Kentucky General Assembly.

## CONCLUSION

For these reasons, this Court should vacate the preliminary injunction.

Respectfully submitted by,

*s/ John H. Heyburn*
Matthew F. Kuhn                          Office of Kentucky Attorney General
  *Solicitor General*                   700 Capital Avenue, Suite 118
John H. Heyburn                          Frankfort, Kentucky 40601
  *Principal Deputy Solicitor General*   (502) 696-5300
                                      Matt.Kuhn@ky.gov
                                       Jack.Heyburn@ky.gov

*Counsel for Appellant/Cross-Appellee*

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(g) and 6th Cir. R. 32, I certify that this brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(C) because it contains 8,996 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Garamond font using Microsoft Word.

*s/ John H. Heyburn*

## CERTIFICATE OF SERVICE

I certify that on October 15, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ John H. Heyburn*

## ADDENDUM

The Appellant/Cross-Appellee John Burlew designates the following district court documents as relevant to this appeal:

1. Doe's complaint, R.1, PageID#1–14.

2. Doe's amended complaint and attachments, R. 11 to 11-3, PageID#50–76.

3. Doe's motion for preliminary injunction, R.12, PageID#77–101.

4. Doe's motion for class certification, R.13, PageID#114–15.

5. Burlew's opposition to motions for preliminary injunction and class certification and motion for summary judgment, R.19, PageID#136–65.

6. Doe's consolidated reply and response brief on motion for preliminary injunction, class certification, and summary judgment, and attachment, R. 21 and 21-1, PageID#186–206.

7. Burlew's reply in support of motion for summary judgment, R.25, PageID#222–32.

8. Memorandum Opinion and Order granting Doe's motion for a preliminary injunction and denying Burlew's motion for summary judgment, R.26, PageID#233–46.

9. Memorandum Opinion and Order denying Doe's motion for class certification, R.27, PageID#247–53.

10. Doe's emergency motion to modify preliminary injunction, R.28, PageID#254–58.

11. Burlew's notice of appeal, R.29, PageID#260–61.

12. Doe's motion to modify preliminary injunction pending appeal, R.30, PageID#262–63.

13. Burlew's response to motion to modify preliminary injunction, R.31, PageID#265–71.

14.    Doe's reply in support of motion to modify preliminary injunction, R.33, PageID#276–77.

15.    Doe's notice of cross-appeal, R.34, PageID#281–82.

16.    Order denying Doe's motions to modify preliminary injunction, R.37, PageID#296–99.