CASE NOS. 24-5669, 24-5743

=====

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

JOHN DOE,

*Plaintiff-Appellee / Cross-Appellant,*

v.

JOHN BURLEW,

*Defendant-Appellant / Cross-Appellee.*

---

On Appeal from the United States District Court
for the Western District of Kentucky
No. 4:24-CV-00045-GNS

---

## RESPONSE AND PRINCIPAL BRIEF FOR
## PLAINTIFF-APPELLEE / CROSS-APPELLANT JOHN DOE

Guy Hamilton-Smith
Law Office of Guy Hamilton-Smith, PLLC
1707 L Street NW, Suite 1030
Washington, D.C., 20036
202.681.5157
guy@guyhamiltonsmith.com
*Counsel for Plaintiff-Appellee / Cross-Appellant John Doe*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and 6 Cir. R. 26.1, Plaintiff-Appellee / Cross-Appellant John Doe is a natural individual and is not a subsidiary or affiliate of a publicly-owned corporation. Neither Mr. Doe nor undersigned counsel are aware of any corporation that has a financial interest in the outcome of this litigation.

TABLE OF CONTENTS

**Corporate Disclosure Statement**...................................................................... i

**Table of Authorities**................................................................................ iv

**Statement in Support of Oral Argument** ............................................. 1

**Jurisdictional Statement** ....................................................................... 2

**Statement of the Issues** ........................................................................ 3

**Statement of the Case** .......................................................................... 4

**Summary of the Argument** ................................................................... 10

**Argument**................................................................................................ 17

   **I.**   **Standard of Review** ....................................................................... 17

   **II.**  **The District Court Correctly Found That SB 249 Likely Violates the First Amendment** ...................................................................... 17

      *A.*  *SB 249 Violates the First Amendment Right to Anonymous Speech* ........ 17

      *B.*  *SB 249 is Overbroad as it Criminalizes a Substantial Amount of Protected Speech, and Kentucky Already has Multiple Sets of Laws Which Meet the Same Goals* ...................................................... 27

      *C.*  *SB 249 is Neither Narrowly Tailored, nor is it the Least Restrictive Means of Meeting a Compelling Governmental Goal* ............................................. 41

D.  *Because of Mr. Doe's Likelihood of Success on the Merits, the District Court Did Not Abuse its Discretion in Granting a Preliminary Injunction* ................................................................................................. 49

**III. The Scope of the Injunction Should Be Expanded, Given the Likely Facial Invalidity of SB 249** .......................................................................... 50

**Conclusion** ............................................................................................................ 56

**Certificate of Compliance** ................................................................................. 58

**Certificate of Service** ......................................................................................... 58

**Addendum** ............................................................................................................ 59

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. Nat'l Sec. Agency*, 493 F.3d 644 (6th Cir. 2007)...................................... 40

*American Civil Liberties Union v. Miller*, 977 F. Supp. 1228 (N.D. Ga. 1997) ..... 25

*Bannister v. Knox County Board of Education*, 49 F.4th 1000 (6th Cir. 2022) ...... 36

*Bible Believers v. Wayne County*, 805 F.3d 228 (6th Cir. 2015) ............................ 18

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ........................................................ 51

*Brown v. Socialist Workers '74 Campaign Committee (Ohio)*,
    459 U.S. 87 (1982) ............................................................................ 19, 23

*Buckley v. American Con. Law Found., Inc.*, 525 U.S. 182 (1999)............ 23, 24, 34

*Buckley v. Valeo*, 424 U.S. 1 (1976).................................................................. 19, 23

*Califano v. Yamasaki*, 442 U.S. 682 (1979)...................................................... 51, 52

*Citizens United v. FEC*, 558 U.S. 310 (2010)........................................................ 18

*Commonwealth v. Biden*, 57 F.4th 545 (6th Cir. 2023)........................................... 51

*Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003).................... 45

*Connection Distrib. Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998)............................ 52

*Coppolino v. Noonan*, 102 A.3d 1254 (Pa. Comm. Ct. 2014) ............................... 20

*Cornelio v. Connecticut,* 2023 U.S. Dist. LEXIS 163106 at * 3
    (D. Conn. September 14, 2023)............................................................ 45

*Doe et al. v. Snyder et al.,* 101 F.Supp.3d 722 (E.D. Mich. 2015)......................... 46

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) ........................................................ 20

*Doe v. Kentucky ex rel. Tilley,* 283 F.Supp.3d 608 (E.D. Ky. 2017) ...................... 48

*Doe v. Lee,* 518 F.Supp.3d, 1157 (M.D. Tenn. 2021) ............................................. 20

*Doe v. Marshall*, 367 F.Supp.3d 1310 (M.D. Ala. 2019)........................................ 21

*Doe v. Nebraska*, 898 F.Supp.2d 1086 (D. Neb. 2012)........................................... 47

*Doe v. Prosecutor,* 705 F.3d 694 (7th Cir. 2013) ........................................ 30, 31, 33

*Doe v. Reed,* 561 U.S. 186 (2010) ........................................................................ 22

*Doe v. Shurtleff,* 628 F.3d 1217 (10th Cir. 2010).............................................. 20, 23

*Doe v. Snyder*, 834 F.3d 696 (6th Cir. 2016)...................................................... 5, 45

*Edenfield v. Fane*, 507 U.S. 761 (1993).......................................................... 27, 55

*Ex Parte Young*, 209 U.S. 123 (1908)................................................................... 52

*Felix v. Young*, 536 F.2d 1126 (6th Cir. 1976) ..................................................... 40

*Fox v. Saginaw Cnty.,* 67 F.4th 284 (6th Cir. 2023)........................................... 8, 52

*G&V Lounge, Inc. v. Mich. Liquor Control Comm'n,*
   23 F.3d 1071 (6th Cir. 1994) ............................................................................ 50

*Garcia v. Stillman*, 2023 U.S. Dist. LEXIS 85111 at *8,
   (S.D. Fla. May 15, 2023).................................................................................. 53

*Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624 (6th Cir. 2009)........... 17

*Gundy v. United States*, 139 S.Ct. 2116 (2019) .................................................... 23

*Holder v. Humanitarian Law Project*, 130 S.Ct. 2705 (2010)............................... 55

*Hurley v. Irish-American Gay*, 515 U.S. 557 (1995)............................................. 25

*Jaynes v. Commonwealth*, 666 S.E.2d 303, 313 (Va. 2008) ................................. 25

*L.W. v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023)........................................... 54

*Lamont v. Postmaster General*, 381 U.S. 301 (1965).................................. 19, 23, 34

*Libertarian Party of Ohio v. Husted*, 751 F.3d 403 (6th Cir. 2014)....................... 35

*Lichtenstein v. Hargett*, 83 F.4th 575 (6th Cir. 2023) ............................... 18

*Lindenbaum v. Realgy, LLC,* 13 F.4th 524 (6th Cir. 2021) .................................... 22

*L.W. v. Skrmetti*,
   679 F.Supp.3d 668 (M.D. Tenn. 2023)....................................................... 54

*Massachusetts v. Oakes*, 491 U.S. 576 (1989)........................................... 27

*McClendon v. Long*, 22 F.4th 1330 (11th Cir. 2022) .............................. 21

*McCullen v. Coakley*, 573 U.S. 464 (2014) ........................................... 18

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)................... 6, 10, 19, 25

*McKune v. Lile,* 536 U.S. 24 (2002) ..................................................... 44

*Moody v. NetChoice, LLC*, 144 S.Ct. 2383 (2024) ........................................ 38, 46

*Morevac v. Cameron*, 2023 U.S. Dist. LEXIS 211056,
   (E.D. Ky. November 28, 2023) ........................................................ 52

*NetChoice, LLC v. Bonta*, 113 F.4th 1101 (9th Cir. 2024)................................ 38, 39

*Packingham v. North Carolina*, 582 U.S. 98 (2017) ..................................... passim

*Peterson v. Nat'l Telecomm. & Info. Admin.*, 478 F.3d 626 (4th Cir.2007) ........... 34

*Planned Parenthood Ass'n v. City of Cinncinnatti*,
   822 F.2d 1390, 1400 (6th Cir. 1987) ................................................. 49

*Platt v. Board of Comm'rs on Grievs. and Discipline of Ohio Supreme Court*, 769 F.3d 447, (6th Cir. 2014) .................................................... 17

*Poe v. Labrador*, 2023 U.S. Dist. LEXIS 229332, (D. Idaho, December 26, 2023) ...................................................................... 53

*Quilloin v. Walcott*, 434 U.S. 246 (1978) ................................................ 36

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ................................ 18, 24

*Richmond Newspapers, Inc. v. Virginia.*, 448 U.S. 555 (1980) ............. 51

*Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781 (1988) ............................... 25

*Roberts v. Neace,* 958 F.3d 409 (6th Cir. 2020) .................................... 49

*Sanderson v. Bailey*, 2024 U.S. Dist. LEXIS 180293 (E.D. Mo. October 2, 2024) ........................................................................ 21

*Sharpe v. Cureton*, 319 F.3d 259 (6th Cir. 2003) .................................. 51

*Shedd Brown Mfg. v. Tichenor*, 257 S.W.2d 894 (Ky. 1953) ................ 29

*Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831 (6th Cir. 2017) ....... 22

*Smith v. Doe*, 538 U.S. 84 (2003) .................................................... 32, 44

*Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011) .................................. 26

*Speet v. Schuette,* 726 F.3d 867 (2013) ................................ 27, 33, 34, 52

*Stanley v. Georgia*, 394 U.S. 557 (1969) ............................................... 36

*State v. Hill,* 341 So.3d 539 (La. 2020) .................................................. 21

*Talley v. California*, 362 U.S. 60 (1960) ................................................ 19

*Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622 (1994) ..... 18, 42

*United States v. Caraher*, 973 F.3d 57 (2nd Cir. 2020) .......................................... 32

*United States v. Clark*, 24 F.4th 565 (6th Cir. 2022)................................................ 32

*United States v. Hansen*, 599 U.S. 762 (2023) ................................................. 37, 51

*United States v. Williams*, 553 U.S. 285 (2008)................................................ 27, 28

*Virginia v. Hicks*, 539 U.S. 113 (2003) .................................................................... 27

*Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*,
   536 U.S. 150 (2002) ............................................................................................. 24

*White v. Baker*, 696 F.Supp.2d 1289 (N.D. Ga. 2010)............................................ 20

**Statutes**

28 U.S.C. § 1746........................................................................................................ 41

8 U.S.C. § 1324.......................................................................................................... 37

KRS § 17.500............................................................................................................. 32

KRS § 17.520............................................................................................................. 32

KRS § 17.544........................................................................................................ 6, 50

KRS § 17.546............................................................................................................. 30

KRS § 509.020........................................................................................................... 33

KRS § 509.040........................................................................................................... 33

KRS § 510.115........................................................................................................... 30

KRS § 532.060........................................................................................................... 30

**Other Authorities**

David Feige, *A 'Frightening' Myth About Sex Offenders*,
New York Times, Sept. 12 2017 ........................................................... 44

Ira Ellman & Tara Ellman, *"Frightening and High:" The Supreme Court's Crucial
Mistake About Sex Crime Statistics*, 30 CONST. COMMNT. 495 (2015) .............. 44

## Constitutional Provisions

U.S. CONST. amend. I ............................................................. 36

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Pursuant to FRAP 34(a) and 6 Cir. R. 34(a), Plaintiff-Appellee / Cross-Appellant John Doe believes that oral argument would be helpful to resolving this cross-appeal as it involves issues of first impression in this Circuit, and oral argument would assist in the Court's determination of the constitutional questions being presented. Consequently, Mr. Doe respectfully requests that the Court set the above-captioned cases for oral argument.

## JURISDICTIONAL STATEMENT

Mr. Doe brought facial and as-applied claims below that Kentucky's SB 249—now codified at KRS § 17.544—violated the First and Fourteenth Amendments to the United States Constitution. *Verified Class Complaint*, RE 1, Page ID# 1; *First Amended Verified Class Complaint*, RE 11, Page ID# 50. Consequently, the district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a), and 42 U.S.C. § 1983. The district court entered an order preliminarily enjoining the enforcement of SB 249 against a provisional defendant class of Kentucky County Attorneys on July 12, 2024. *Mem. Opinion and Order*, RE 26, Page ID# 233. Subsequently, the district court modified the injunction to apply only to Mr. Burlew and Mr. Doe after it denied class certification on July 18, 2024. *Mem. Opinion and Order*, RE 27, Page ID# 247. Mr. Burlew timely filed his Notice of Appeal on July 25, 2025. *Defendant's Notice of Appeal*, RE 29, Page ID# 260. Mr. Doe timely filed his Notice of Cross-Appeal on August 15, 2024. *Notice of Cross-Appeal*, RE 34, Page ID# 281. Because these appeals flow from a preliminary injunction in the district court, this Court has interlocutory appellate jurisdiction pursuant to 28 USC § 1292(a)(1).

## STATEMENT OF THE ISSUES

The issues presented by Defendant-Appellant/Cross-Appellee John Burlew are:

1)  Whether Kentucky's SB 249 likely violates the First Amendment to the United States Constitution, both facially and as-applied; and

2)  Whether the district court abused its discretion in weighing the preliminary injunction factors and granting the preliminary injunction.

The issue presented by Plaintiff-Appellee/Cross-Appellant John Doe is:

3)  Should this Court affirm the finding of the district court that SB 249 likely facially violates the First Amendment, whether the injunction below may be expanded to reach all prosecutors statewide to completely enjoin SB 249's enforcement pending a resolution on the merits.

### STATEMENT OF THE CASE

John Doe lives with his wife and children in Daviess County, Kentucky. *First Amended Verified Class Complaint,* RE 11, Page ID# 53.  Like millions of his fellow Americans, he uses social media to voice his opinions on various matters, to keep in touch with family and friends, to receive information, and to debate in what the Supreme Court has termed "the modern public square." Id.; *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017). Like many of his fellow social media users, Mr. Doe uses a pseudonym when voicing his opinions. Id. Unlike many of his fellow Americans, Mr. Doe has an exceedingly good reason for doing so.

Mr. Doe was previously convicted of a crime related to possession of child sexual abuse material under Kentucky state law in 2015. He pled guilty and received a suspended sentence, which was terminated early due to good behavior on Mr. Doe's part. Id. His offense did not involve contact or attempted contact with a minor. *First Amended Verified Class Complaint,* RE 11, Page ID# 53. However, under Kentucky law, he is required to register with Kentucky's sex offense registration system ("SORA") for life because he was convicted of multiple counts, even though they arose from the same underlying transaction. Id. Mr. Doe has not been under any form of criminal supervision since 2018, and has no other criminal history outside of an infraction when he was eighteen years old. Id. Further, Mr. Doe has always been compliant with his obligations under SORA. Id.

Mr. Doe's decision to favor anonymity with respect to communicating online is not born out of nefarious intention. To the contrary, while doing so protects his identity (and thus the residential address he shares with his wife and children in light of SORA broadcasting the same to the general public), he is open about his past conviction and requirement to comply with SORA on these anonymous accounts. Id.  Owing to this, Mr. Doe has been the recipient of threats and harassment online, both with respect to opinions he expresses about SORA, and matters entirely unrelated to criminal justice where his status as a registrant is used to demean him and dismiss any opinion he holds. Id., Page ID# 54. While the opinions that Mr. Doe expresses about SORA (i.e., that it is ineffective, and that it unfairly impacts his children) may not be popular, those opinions are not without foundation as both the record and past opinions of this Court indicate. *See Doe v. Snyder*, 834 F.3d 696, 704 (6th Cir. 2016) (observing evidence that offense-based registration systems like Kentucky's have "at best, no impact on recidivism.")

Mr. Doe is well aware that that other individuals required to comply with SORA schemes around the country have been targeted for threats, harassment, vandalism, and even violence due to their requirement to register. Id. Indeed, various crimes—up to and including homicides of registrants and their family members— are well-documented. *Declaration of Dr. Kristen Zgoba,* RE 11-2, Page ID# 73.

Anonymity has served as a "shield from the tyranny of the majority" for Mr. Doe. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995), and does so for others similarly situated. While the harassment that Mr. Doe has experienced has—thus far—has been cabined to cyberspace because of his anonymity, Kentucky's SB 249[1] changes that: it provides that any person who had previously been convicted of what Kentucky law characterizes as a crime against a minor and who is required to register with SORA "shall not create or have control over an account on a social media platform unless the account displays his or her full legal name." KRS § 17.544(2). It further defines the scope of the applicability of the prohibition as being similar to that which the Supreme Court considered in *Packingham*. KRS § 17.544(1). Should Mr. Doe be forced to reveal his identity as a condition for availing himself of the right the United States Supreme Court said that he has in *Packingham*, the risk will be too great, and Mr. Doe will fall silent. *First Amended Verified Complaint,* RE 11, Page ID# 55. Given that SB 249 targets a uniquely unpopular population of individuals who are particularly vulnerable to violence and reprisal, the effect—if not the intent—of SB 249 is do that which *Packingham* and the First Amendment forbid.

---

[1] SB 249 has since been codified at KRS § 17.544. Following Mr. Burlew's lead, Mr. Doe will refer to the challenged provisions as SB 249 herein. The full text of the law is set out in an addendum to the brief pursuant to Fed. R. App. Proc. 28(f).

Thus, Mr. Doe sued. He filed a verified class complaint on April 29, 2024 alleging on both facial and as-applied grounds that the law violates his right to anonymous speech, and that it is overbroad. *Verified Class Complaint,* RE 1, Page ID# 1. Mr. Doe included alongside his Complaint an expert witness declaration from Dr. Kristen Zgoba, setting forth scientific findings that are relevant to Mr. Doe's claims, including the extent of harassment and reprisal that people sharing Mr. Doe's legal status experience, scientific findings on recidivism, and as well as other findings that undermine SB 249's asserted efficacy. *Declaration of Kristen Zgoba,* RE 11-2, Page ID# 73. Counsel sent Mr. Burlew a request for waiver of service and received no response. Mr. Burlew was served on June 7, 2024. *Proof of Service,* RE 10, Page ID# 49. Mr. Doe subsequently filed an amended verified class complaint, as well as motions for a preliminary injunction and class certification seeking certification of both a plaintiff and a defendant class. *First Amended Verified Class Complaint,* RE 11, Page ID# 50; *Motion for Preliminary Injunction,* RE 12, Page ID# 77; *Motion for Class Certification*, RE 13, Page ID# 103. The parties agreed to an expedited and consolidated briefing schedule in light of the looming effective date of the law. *Agreed Order,* RE 18, Page ID# 134. Briefing was had on the pending motions where Mr. Burlew also made a motion for summary judgment. *Defendant's Response and Cross Motion,* RE 19, Page ID# 136; *Plaintiff's Consolidated Reply and Response Brief*, RE 20, Page ID# 167.

Fortunately for Mr. Doe, he obtained a preliminary injunction on July 12, 2024 – three days before the law was to go into effect. *Memorandum Opinion and Order*, RE 26, Page ID# 233. In the same Order, Mr. Burlew's request for summary judgment was denied. Id. In the initial injunction ruling, the court below enjoined the proposed defendant class of misdemeanor prosecutors from enforcing the provisions of SB 249, finding that Mr. Doe was likely to win on the merits. Id., Page ID# 245.

Subsequently the district court denied Mr. Doe's motion seeking to certify a plaintiff and a defendant class relying on this Court's decision in *Fox v. Saginaw Cnty.,* 67 F.4th 284 (6th Cir. 2023), and dramatically whittled back the scope of the preliminary injunction to apply solely as between Mr. Doe and Mr. Burlew notwithstanding the finding of likely invalidity of the law. *Memorandum Opinion and Order,* RE 27, Page ID# 247.

Mr. Doe filed an emergency motion in the district court seeking to expand the scope of the injunction applied to him on two grounds—that it is proper to issue a statewide injunction in the context of a law that is likely facially invalid under the First Amendment, and that the limited scope of the injunction does not completely remedy Mr. Doe's First Amendment injury. *Emergency Motion,* RE 28, Page ID# 254. Mr. Doe did not seek to have the district court revisit its ruling on the class certification question in that motion, and does not seek it here.

Before the district court could issue a ruling on the pending motion to modify the injunction, Mr. Burlew filed his Notice of Appeal on July 25, 2024. *Notice of Appeal,* RE 29, Page ID# 260. The same day, Mr. Doe moved for an injunction pending appeal in accordance with Fed. R. App. Proc. 8 *Emergency Motion to Modify Pending Appeal,* RE 30, Page ID# 262. Mr. Burlew filed a response to the motions, arguing that the notice of appeal had divested the trial court of jurisdiction to issue a ruling notwithstanding Fed. R. Civ. Proc. 59(e), and that the present injunction affords Mr. Doe complete relief. *Defendant's Response to Plaintiff's Emergency Motion to Modify Preliminary Injunction and to Modify Injunction Pending Appeal*, RE 31, Page ID# 265.

Mr. Doe subsequently filed a motion in this Court seeking a statewide injunction pending appeal, and briefing was had on the motion. *Emergency Motion for Injunction Pending Appeal*, 6. Cir. RE 6-1; *Response to John Doe's Emergency Motion for Injunction Pending Appeal,* 6 Cir. RE 11; *John Doe's Reply to John Burlew's Response Regarding Emergency Motion for Injunction Pending Appeal*, 6 Cir. RE 12. Mr. Doe subsequently filed his Notice of Cross-Appeal. *Notice of Cross-Appeal*, RE 34, Page ID# 281. This Court denied the motion September 5, 2024 on the grounds that the district court had not yet ruled on Mr. Doe's request. *Order*, 6 Cir. RE 15-2. The district court subsequently denied Mr. Doe's motions to modify the injunction citing a lack of jurisdiction given the pendency of Mr. Burlew's

9

appeal, and that Mr. Doe had not offered the court below sufficient authority for the request. *Order*, RE 37, Page ID# 296. The instant round of briefing results.

## SUMMARY OF THE ARGUMENT

Mr. Burlew makes a forceful argument for the constitutionality of SB 249, supposing the law and the record are as he imagines them to be. Respectfully, they are not. Mr. Burlew, for example, contends throughout his brief that the law applies to child predators. Both the text of the law and the evidence below indicate that this is a mistaken assumption. Mr. Burlew contends that Mr. Doe relied primarily on his own experiences in mounting a facial challenge. The record indicates that this is also not so. Mr. Burlew contends that the SB 249 is something other than a content-based restriction on speech. This belief is belied by reading the text of the bill that the Kentucky General Assembly passed.

To be sure, except perhaps amongst his wife and children, Doe is unlikely to prevail in a popularity contest. But constitutional rights are not awarded on that basis, and are afforded to even[2] the unpopular. The district court was correct in finding that SB 249 likely violates the First Amendment, and did not abuse its discretion in entering a preliminary injunction.

---

[2] Perhaps especially. *McIntyre*, 514 U.S. at 356. ("[Anonymity] exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation – and their ideas from suppression – at the hands of an intolerant society.")

First, the law deprives impacted individuals subject of their constitutional right to engage in anonymous speech on platforms which have become the modern town square, and which the Supreme Court has unequivocally said the government may not ban them from. On its face, SB 249 bans one form of protected speech even as it does not ban all speech, but that is a distinction without difference for First Amendment purposes: the government may not ban any form of constitutionally-protected expression, whether it be by acres or by inches.

While Mr. Burlew contends that there is no right to anonymous speech, such a position is contrary to decades of Supreme and lower court decisions, including decisions from this Court. This is particularly so with respect to unpopular causes and unpopular groups. Mr. Burlew further contends that SB 249 is something other than a content-based restriction on speech, but this position is also contrary to both well-established Supreme Court precedent and the plain text of the law Mr. Doe complains of. Because SB 249 directly regulates the content of a person's speech, it is axiomatically content-based regardless of governmental approval of the substantive message expressed. Because the structure of SB 249 directly regulates the content of a person's speech by mandating self-disclosure to the public, it faces a far more rigorous standard of constitutional scrutiny than did the ill-fated North Carolina law in *Packingham*.

Next, SB 249 is overbroad. On its face it imposes criminal penalties for a universe of constitutionally-protected speech—personal, political, familial, religious, commercial—in order ward off discrete illicit conduct that the Commonwealth already heavily criminalizes (and in fact imposes enhanced penalties for if committed by an individual subject to SORA). Rather than apply only to people convicted of sex offenses, SB 249 applies even to individuals whose crimes had no sexual or technological element at all due to the way that Kentucky law categorizes them. Owing to its retrospective operation, it further applies it applies to individuals who, like Mr. Doe, have lived law-abiding lives for years and to those who statistically present no more of a risk of committing a crime than any other Kentuckian. The law is so broadly drafted that it even prohibits Mr. Doe from supervising the social media accounts of his own children to ensure their safety online – something SB 249's sponsor and Mr. Burlew urge is the best way to keep them safe (and, one presumes, would agree he *should* be able to do).

The worst part: the law doesn't do anything to serve the government's asserted interest in public protection. This is so for several reasons. The burdens imposed by SB 249 are predicated on well-worn and widely-accepted myths regarding child predation, recidivism of SORA registrants, and the efficacy of restrictions that come along with SORA like SB 249 in discharging a public safety duty. While Mr. Burlew asserts that the law applies to child predators, nearly every technologically-

facilitated offense against a minor is committed by someone to whom SB 249 would not apply. This evidence was unrebutted in the proceedings below. Enacting laws which are not simply agnostic of but outwardly hostile to publicly-available scientific findings regarding these topics necessarily wastes valuable resources and undermines the law's ability to do that which Mr. Burlew and the General Assembly say they take seriously, and Mr. Doe believes ought to take seriously: protect the public, including Mr. Doe and his children.

But even if one were to leave these findings aside, Mr. Burlew never explains how SB 249 actually does anything to deter a dangerous individual who seeks to take to social media to commit the kind of crime that SB 249 seeks to ward off. Kentucky law already provide for enhanced penalties when such offenses are committed by an individual subject to SORA. If an individual is undeterred by the prospect of a Class B felony and mandatory prison time, why would they be deterred by the additional punishment of a Class A misdemeanor that SB 249 provides for? Neither Mr. Burlew, Mr. Doe, nor the district court know the answer to that question. Mr. Burlew argues that SB 249 allows parents to know who their children communicate with online, but that assumes that someone interested in committing a serious felony is content to tell everyone who is committing it. A person who is intent on committing a crime online will not be deterred by this new requirement and will simply flout it; at the same time, those who have no intent to commit crimes will

effectively be stripped of a constitutional right based solely on the fact of a past conviction.

It further assumes that those parents invested enough in their children's well-being to monitor their online activity do so only by examining of the names of the accounts that their children communicate with (and, further, to run background checks on them), but simultaneously shut their eyes to the contents of those same communications which would reveal any inappropriate conduct. These are beliefs that blink reality. SB 249 adds nothing to its asserted goals.

Taken together, the evidence of the faulty assumptions that SB 249 is premised on lays the effect of the law bare: SB 249 operates to impose unique First Amendment burdens on unpopular individuals who are doing their best to reintegrate into a society that does not want them and to comply with an ever-expanding web of ostensibly civil restrictions passed under a banner of public safety—but which do little other than to arguably undermine those very same goals in favor of political expediency. In this preventive First Amendment context, this is insufficient to support a finding of the law's constitutionality.

SB 249 is neither narrowly tailored, nor is the least restrictive means to meet a compelling governmental interest. It is also quite similar to laws that this Court has struck down in the past. Because Mr. Doe has a strong likelihood of success on the

merits of the underlying constitutional questions, the district court was well within its discretion in entering a preliminary injunction.

Of course, Mr. Burlew disagrees. But the arguments that he advances in support of this contention are unavailing for varying reasons. Mr. Burlew contends that Mr. Doe wasn't thorough enough in mounting a facial challenge, that Mr. Doe did not establish that SB 249 encompasses an enormous amount of constitutionally-protected conduct, that the district court should have considered differences and distinctions that the law itself is indifferent to, and so on. As set out below, each of these arguments is fashioned out of either misapplication—or misunderstanding—of precedent, the text of SB 249, the record, or some combination thereof.

Given the likely facial invalidity of the law, Mr. Doe seeks to expand the injunction statewide in his cross-appeal. The district court declined to do so, citing the pendency of Mr. Burlew's appeal, and this Court declined to do so on an emergency basis given that the district court had not yet ruled. Given that the law was already in operation, Mr. Doe opted to wait for this briefing to address the question.

The scope of the violation that Mr. Doe has established below and herein leads to a conclusion that it is proper for the district court to issue the statewide injunction, prohibiting the enforcement of SB 249 pending a resolution on the merits. This is because of the facial nature of the violation – that the likely unconstitutionality of

SB 249 owes not only to Mr. Doe's personal circumstances, but the text of the law itself, and that it is uniform in its application.

The logic of an overbreadth claim implicates not only one's personal speech, but the speech others might make but for the existence of the law. Thus, where a law is likely overbroad under the First Amendment, it flouts the constitutional underpinnings of overbreadth claims to only preliminarily prohibit the Daviess County Attorney from enforcing the law against only Mr. Doe, but to allow it in Kentucky's 119 other counties against the thousands of other individuals whose rights Mr. Doe has established are likely violated in the same way as his are.

Given the ruling on class certification, and that the Kentucky Attorney General enjoys *Ex Parte Young* immunity on laws like SB 249, Mr. Doe's request appears to be the sole way to preliminarily enjoin the enforcement of a facially unconstitutional law short of joining 119 additional plaintiffs and 119 additional defendants. This is a monumental waste of judicial and taxpayer resources, very difficult for litigants that lack institutional funding, and—Mr. Doe suggests—should be unnecessary where there is a finding of likely facial invalidity of a law under the First Amendment.

Thus, Mr. Doe respectfully requests that this Court affirm the fact of the injunction, but also to either enter a statewide injunction itself, or remand with instructions for the district court to do so pending a resolution on the merits.

**ARGUMENT**

## I.    Standard of Review

This Court employs a mixed standard of review in evaluating the propriety of a preliminary injunction in First Amendment cases. The district court's legal conclusions are reviewed *de novo*, including the preliminary injunction factor that looks to the movant's likelihood of success on the merits. *Platt v. Board of Comm'rs on Grievs. and Discipline of Ohio Supreme Court*, 769 F.3d 447, 454 (6th Cir. 2014). However, the district court's balancing of the preliminary injunction factors and the ultimate determination as to whether to issue the preliminary injunction is reviewed for abuse of discretion. *Id.* An abuse of discretion occurs when there is "a definite and firm conviction that the trial court committed a clear error of judgment" where a trial court "relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard." *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 634 (6th Cir. 2009) (cleaned up, citations omitted). Because both Mr. Burlew's appeal and Mr. Doe's cross-appeal stem from the preliminary injunction below, they are both subject to the same standard.

## II.    The District Court Correctly Found That SB 249 Likely Violates the First Amendment

### A. SB 249 Violates the First Amendment Right to Anonymous Speech

Mr. Doe is likely to succeed on the merits. SB 249 prohibits Mr. Doe and others so-situated from engaging in their right to anonymous speech on platforms

17

that the Supreme Court has referred to as the "modern public square." *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017). Because it imposes these burdens on a uniquely despised group of Americans,[3] and because it does so through directly regulating the content of speech, it must withstand strict scrutiny and is presumptively invalid.[4] *Reed v. Town of Gilbert*, 576 U.S. 155 (2015).

When a statute must pass through the eye of the strict scrutiny needle, the burden is on the government to demonstrate that the challenged regulation is the least restrictive means of achieving a compelling state interest. *McCullen v. Coakley*, 573 U.S. 464 (2014). Here, there exists a substantial likelihood that the government cannot meet this "exacting standard." *Id.* at 478; *Bible Believers v. Wayne County*, 805 F.3d 228, 248 (6th Cir. 2015) (en banc) ("No state action that limits protected speech will survive strict scrutiny unless the restriction is narrowly tailored to be the least-restrictive means available to serve a compelling government interest.") SB 249 is many things, but is not a narrowly tailored law that is the least-restrictive means to meeting a compelling governmental interest.

---

[3] The Supreme Court has indicated that speech regulations which target disfavored speakers can also trigger strict scrutiny. *Citizens United v. FEC*, 558 U.S. 310 (2010); *Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622, 658 (1994).

[4] Mr. Burlew appears to concede that strict scrutiny applies. While Mr. Burlew refers to the standard as "exacting scrutiny," First Br. at 15, 30, this Court has explained exacting and strict scrutiny are synonymous. *Lichtenstein v. Hargett*, 83 F.4th 575, 586 (6th Cir. 2023).

Anonymous speech is protected speech. That protection is heightened in the context of unpopular speakers and unpopular causes. "Anonymous pamphlets, leaflets, brochures, and even books have played an important role in the progress of mankind. Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all." *Talley v. California*, 362 U.S. 60, 64 (1960) (striking down prohibition on distribution of anonymous handbills). *See also Buckley v. Valeo*, 424 U.S. 1 (1976) (finding that First Amendment prohibits compelled disclosures where there exists a "reasonable probability" that disclosures will result in "threats, harassment, or reprisals" against persons so identified); *McIntyre,* 514 U.S. at 343 ("Anonymity thereby provides a way for a writer who may be personally unpopular to ensure that readers will not prejudge her message[.]"); *Brown v. Socialist Workers '74 Campaign Committee (Ohio)*, 459 U.S. 87,101 (1982) (striking down disclosure requirement where disclosure has a reasonably probability of resulting in reprisal); *Lamont v. Postmaster General*, 381 U.S. 301 (1965) (striking down requirement that persons who were interested in receiving communist materials in the mail affirmatively indicate their desire to do so to the government). While the present challenge does not involve circulating petitions or canvassing, the Supreme Court has further held that the First Amendment protections that it has recognized extend to "the most importance places (in a spatial sense) for the exchange of views" as they exist today:

the internet, and social media in particular. *Packingham*, 538 U.S. at 104-105 (*citing Reno v. American Civil Liberties Union*, 521 U.S. 844, 868 (1997)).

Mr. Burlew suggests that a loss of Mr. Doe's freedom of speech is "the price he pays" his conviction nearly a decade ago. First Br. at 31. However, to Mr. Doe's knowledge, of the courts that have considered the anonymous speech rights of SORA registrants, none has agreed with him. *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014) (striking down requirement of disclosure to the government because, *inter alia,* it too "freely allow[ed] law enforcement to disclose sex offenders' Internet identifying information to the public."); *Doe v. Lee,* 518 F.Supp.3d, 1157, 1207 (M.D. Tenn. 2021) ("A law is unconstitutional under the First Amendment if it operates as an outright ban or impermissibly burdens anonymous online speech."); *White v. Baker*, 696 F.Supp.2d 1289 (N.D. Ga. 2010) (entering injunction against statute that required disclosure of identifiers by registrants citing anonymous speech concerns); *Cf. Coppolino v. Noonan*, 102 A.3d 1254, 1283 (Pa. Comm. Ct. 2014) (in context of anonymous speech challenge, "the determining factor is whether a given statute permits or makes likely the disclosure of a registrant's [identity] to the public."); *Doe v. Shurtleff,* 628 F.3d 1217 (10th Cir. 2010) (upholding law that required disclosure of internet identifiers to the government against anonymous

speech challenge because it prohibited disclosure of internet identifiers to the public).[5]

The above decisions stand for several related propositions: that anonymous speech, including anonymous speech on the Internet, figures largely into First Amendment protections, that its roots extend back to the founding of our country, that its importance is emphasized with respect to both unpopular causes and unpopular speakers, and that Mr. Doe's legal status as a SORA registrant is insufficient to overcome that constitutional protection. SB 249 flouts all these constitutional considerations. Given the unpopularity of SORA registrants as a group, it operates to chill the willingness of people subject to the law to avail themselves of the right the Supreme Court unequivocally has stated that they have.

---

[5] Mr. Burlew conflates the operation of SORA schemes, First Br. at 31, which publicly disseminate information about past convictions and home addresses with the instant challenge. The cases relied on by Mr. Burlew stand for the proposition that the government might properly disseminate information about an individual's past conviction, but none of the cases stand for the proposition that the government might require an individual himself to do so. Indeed, courts around the country have found such a proposition to be constitutionally infirm under the First Amendment. *See State v. Hill,* 341 So.3d 539 (La. 2020) (striking down on compelled speech grounds the requirement that SORA registrants carry branded identification card); *Doe v. Marshall*, 367 F.Supp.3d 1310, 1324 (M.D. Ala. 2019) (similar)*; McClendon v. Long*, 22 F.4th 1330 (11th Cir. 2022) (striking down on First Amendment grounds law enforcement practice of placing warning signs on Halloween on properties of people required to comply with SORA)*; Sanderson v. Bailey*, 2024 U.S. Dist. LEXIS 180293 (E.D. Mo. October 2, 2024) (similar).

In asserting that there is no right to anonymous speech, Mr. Burlew relies on one sentence from a fourteen-year-old concurrence in *Doe v. Reed,* 561 U.S. 186, 218 (2010) wherein Justice Stevens expressed his disagreement with other justices over the contention of whether there was a right to anonymous speech. First Br. at 29-30. Leaving aside that between the Justices in footnotes in concurring opinions are not binding authority, *see Lindenbaum v. Realgy, LLC,* 13 F.4th 524, 527 n.1 (6th Cir. 2021), and the fact that later decisions reassert that right, *see Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831, 835-836 (6th Cir. 2017) (acknowledging "the right to anonymous speech" of persecuted and unpopular groups), the context from which Mr. Burlew draws his proposition renders it a largely academic distinction.

Justice Stevens, as with the remainder of the Court in *Reed*, agreed that laws which deprive unpopular speakers of anonymity who are likely to experience harassment and reprisal violate the First Amendment. *Reed,* 561 U.S. at 201. In *Reed*, this was not the case because the law challenged there—a disclosure requirement attendant to Washington State's referendum process—was unlikely to generally implicate these concerns given the sleepy nature of many referendums and the fact that disclosure had not previously led to instances of harassment. *Id.* The law here is, of course, in stark contrast given that it targets the speech of "one of the most disfavored groups in our society." *Gundy v. United States*, 139 S.Ct. 2116, 2144

(2019); *Declaration of Dr. Kristen Zgoba*, RE 11-2, Page ID# 73. Even Justice

Stevens, then, would seem to agree that the right to anonymous speech exists here.

Mr. Burlew refers to SB 249 as a "mere disclosure requirement,"[6] First Br. at

15, 27, but he is wrong. Mr. Burlew ignores that the Supreme Court has drawn a

distinction between disclosure requirements that are separated from the time of

speech that can later be used to identify the speaker, and disclosure requirements that

mandate speakers identify themselves to the public when they are speaking.

*Shurtleff,* 628 F.3d at 1222-1223 *citing Buckley v. American Con. Law Found., Inc.*,

525 U.S. 182 (1999). The former are disclosure requirements, the latter are not.

Instead of a requirement that mandates speakers disclose their identity to the

government so they can later be identified, SB 249 mandates contemporaneous

identification and is analogous to *Buckley v. American Con. Law Found., Inc.*, 525

U.S. 182 (1999). *Buckley* confronted the Supreme Court with a number of provisions

---

[6] Even if SB 249 could be accurately characterized as a disclosure requirement, the Supreme Court has viewed disclosure requirements with a jaundiced eye when they were deployed against unpopular groups of people likely to experience reprisal or chill from the requirement that they are forced to disclose their identities to engage in protected First Amendment conduct. *See Brown et al. v. Socialist Workers '74 Campaign Committee (Ohio) et al.,* 459 U.S. 87 (1982); *Lamont v. Postmaster General*, 381 U.S. 301 (1965). The Supreme Court observed that one need only show "a reasonable probability" that a disclosure requirement results in harassment for exemption from it. *Valeo,* 424 U.S. at 74. Here, the threats and harassment Mr. Doe has already experienced along with the expert evidence in the record meet this low standard.

23

of Colorado law related to ballot initiatives that required, *inter alia*, petition circulators to wear a name badge identifying themselves. The Court struck down the badge requirement because it required that people engaged in protected First Amendment activity self-identify "at the precise moment when the circulator's interest in anonymity is greatest." *Id.* at 199. SB 249 imposes an analogous badge requirement by requiring Mr. Doe to display his full legal name on any social media account that he creates or controls, and similarly deprives him of his right to anonymity "at the precise moment" when his interest in preserving that anonymity is at its apex. *See also Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150 (2002) (striking down requirement that canvassers apply for and receive a permit containing their name and to display it on demand).

Most problematically, Mr. Burlew further never seriously addresses the reality that SB 249 is a content-based restriction on speech. The most Mr. Burlew does here is serve up some thin soup that if a law expresses no opinion on a substantive message, it is not content-based. First Br. at 28. This is an underinclusive notion of a content-based restriction on speech, as governmental disagreement is not the *sine qua non* of content-based regulation. *See Reed*, 576 U.S. at 165 (2015) ("A law that is content-based on its face is subject to strict scrutiny **regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech.**") (cleaned up, emphasis

added); *Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 795 (1988) ("Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech."); *Hurley v. Irish-American Gay*, 515 U.S. 557, 574 (1995) ("Indeed, this general rule, that the speaker has the right to tailor the speech, applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid.") As the Supreme Court explained in *McIntyre*, "**the identity of the speaker is no different** from other components of the document's content that the author is free to include or exclude." 514 U.S. at 348 (emphasis added).

Taking the United States Supreme Court at their word, lower courts have found laws requiring disclosure of one's identity in connection with speech—like SB 249—to be a content-based restriction on speech. *See American Civil Liberties Union v. Miller*, 977 F. Supp. 1228 (N.D. Ga. 1997) (finding statute that prohibited the use of false names online to be a content-based restriction on speech); *Jaynes v. Commonwealth*, 666 S.E.2d 303, 313 (Va. 2008) (finding state law prohibiting false routing information in e-mails violative of anonymous speech rights, observing "[t]he Supreme Court has characterized regulations prohibiting such anonymous speech as 'a direct regulation of the content of speech.'") (cleaned up). The most Mr. Burlew says about these cases is these cases is that they are not binding on this Court. First Br. at 30. True enough. They are however straightforward applications of

Supreme Court precedent, and the instruction they have to offer on SB 249 is unambiguous. On its face, the law alters the content of speech because it requires an author to include their full legal name alongside any expressions they might make. Consequently, it is a content-based restriction on speech even though it contains no express value judgment on the content of that speech.

Should one read no further, this feature of the law is sufficient to doom it. In *Packingham v. North Carolina*, 582 U.S. 98 (2017), the Supreme Court struck down a Noth Carolina law that barred SORA registrants from engaging in speech on social media websites. *Id.* It did so on a far more forgiving intermediate scrutiny standard, because North Carolina's law was in fact content-neutral. To be sure, SB 249 is different because it permits the use of social media, even as it bans one type of constitutionally-protected speech, and burdens all speech on social media. This is a difference without constitutional distinction here because the Supreme Court has counseled that "the 'distinction between laws burdening and laws banning speech is but a matter of degree' and that the 'Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans.'" *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 565-566 (2011) *citing United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 812 (2000).

Both North Carolina's gone-but-not-forgotten law and Kentucky's SB 249, then, are restrictions on constitutionally-protected speech with similar scope. But

unlike the law in *Packingham*, Kentucky's is content-based. Given that North Carolina's law flunked an intermediate scrutiny standard, it cannot be credibly contested that Kentucky's fares any better against strict scrutiny.

### B. SB 249 is Overbroad as it Criminalizes a Substantial Amount of Protected Speech, and Kentucky Already has Multiple Sets of Laws Which Meet the Same Goals

"Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an era so closely touching our most precious freedoms." *Edenfield v. Fane*, 507 U.S. 761, 777 (1993). As a doctrine, overbreadth protects against the chilling of constitutionally protected expression. *Massachusetts v. Oakes*, 491 U.S. 576 (1989). This concern is particularly heightened where an overly broad law imposes criminal sanctions. *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

"A facial challenge based on substantial overbreadth describes a challenge to a statute that in all its applications directly restricts protected First Amendment activity and does not employ means narrowly tailored to serve a compelling governmental interest." *Speet v. Schuette,* 726 F.3d 867, 873 (2013). In order to demonstrate overbreadth, Mr. Doe has the burden of showing the overbreadth is "substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008). He did so below, and does so now.

The first step in the overbreadth analysis is to properly construe the challenged statute. *Id.* at 293. SB 249 is relatively straightforward in terms of the speech that it covers. It covers all speech on the same platforms that the Supreme Court assumed were at issue in *Packingham*, and prohibits anonymous speech on them by a subset of people subject to Kentucky's SORA.

The overbreadth analysis next considers whether the challenged law reaches a "substantial amount of constitutionally protected conduct," with particularly close scrutiny given to criminal statutes. *Id.* As set out above, people covered by SB 249 including Mr. Doe have both a First Amendment right to access social media platforms, to speak on them, to receive information and to do so without publicly identifying themselves to the public.

Having an account is necessary to participate on these platforms, and a requirement that the account of anyone covered by SB 249 bear his full legal name tethers his identity (and consequently, home address) to any speech that he engages in on social media — indeed, this is the point of SB 249. It encumbers *any* speech that one might make on these platforms: personal, familial, political, religious, commercial, and so on. Asking an educator on social media a question to help one's children with their math homework. Voicing support for a political candidate. Debating important social topics. Complaining to a customer service account of a rental car company. Engaging with advocacy networks. Sharing memes and jokes.

28

By the text of the law, every last syllable of protected speech that one covered by the law might utter on social media is encumbered by a requirement that he do so under his full legal name, or face criminal prosecution. While Mr. Burlew supposes that Mr. Doe needs to list every possible instance of constitutionally-protected speech that the law prohibits, First Br. at 21, Mr. Doe respectfully suggests that this is unnecessary, as it is readily apparent by the text of the law itself: it contains no exceptions, as the district court rightly recognized. *Mem. Opinion and Order*, RE 26, Page ID# 241. In fact, SB 249 is so broadly drafted that Mr. Doe risks a jail term for checking his own children's social media accounts in order to make sure they are safe online, unless he displays his full legal name on their accounts.[7]

Mr. Doe has thus established that SB 249 reaches a substantial amount of constitutionally protected speech, and that this is substantial when considered in relation to the legitimate sweep of SB 249. Without a doubt, the legitimate sweep of SB 249 is in preventing crime, but the ills that SB 249 seeks to prevent are already crimes. Kentucky has multiple sets of laws which target illicit speech both generally and by SORA registrants, both directly and indirectly. Directly, Kentucky law

---

[7] Mr. Burlew disputes this, but Mr. Doe opts to take the text of the law seriously, considering it is his freedom that will hang in the balance. SB 249 prohibits "hav[ing] control" of an account on a social media platform unless that account displays his full legal name. Control can be accomplished either directly or through an intermediary under basic principles of agency, such as Mr. Doe instructing his children to show him their social media accounts, and their communications on them. *See Shedd Brown Mfg. v. Tichenor*, 257 S.W.2d 894, 897 (Ky. 1953).

prohibits the electronic solicitation of a minor (or apparent minor) for sexual purposes, and enhances the same when it is committed by an individual subject to SORA. KRS § 510.115(7). *See Doe v. Prosecutor,* 705 F.3d 694, 700-701 (7th Cir. 2013) (in striking down preventive social media ban, noting "[Criminal punishment is what prevents and deters] undesirable behavior…the state can avoid First Amendment pitfalls by just increasing the sentences for solicitation[.]") Indirectly, Kentucky law further imposes restrictions similar to what the *Packingham* Court "assumes" would be a constitutional prohibition on use of a website to gather information about a minor by an individual subject to SORA. KRS § 17.546(1); *Packingham*, 582 U.S. at 99. Violations of KRS § 510.115(7) are now Class B felonies, providing for between 10- and 20-years' imprisonment. KRS § 532.060(2).

Similar to what the Seventh Circuit recognized in *Prosecutor*, it is curious to suggest that someone seeking to commit a crime and who is undeterred by the prospect of going to prison for at least 10 and perhaps 20 years would instead be warded off by the threat of misdemeanor penalties that SB 249 provides for. By repeatedly enhancing penalties for the conduct that the government seeks to address with SB 249, they have provided deterrence without offending First Amendment freedoms. *Prosecutor*, 705 F.3d at 701. The practical effect of the law is to simply burden and chill the speech of people who are complying with the law in the first place, as someone intent on committing a far more serious crime would simply

ignore the requirements of SB 249. The narrowly tailored and least restrictive means available for the government to meet its interests here are to simply enforce the laws that it already has.

While Mr. Burlew suggests that the law "fills a void" and allows parents to take proactive steps to protect their children, First Br. at 37, it is unclear how it does so, and it is his burden to explain it. *Prosecutor,* 705 F.3d at 701 ("[C]haracterizing the new statute as preventative and the existing statutes as reactive is questionable" in light of deterrence being a main goal of criminal punishment, but "the goal of deterrence does not license the state to restrict far more speech than necessary to target the prospective harm.") Mr. Burlew's argument here assumes that an attentive parent who reviews their child's social media activities cabins that review to the names of accounts that their children interact with (and to further run background checks on those names), but at the same time shut their eyes to the contents of those communications. The existence of such a parent strains credulity, as an involved parent would already be far more interested in the substance of the communications than the names of the accounts, and would alert law enforcement if they detect anything improper – so what does SB 249 add? Perhaps Mr. Burlew suggests it would make the job of law enforcement easier in identifying a suspect, but this goes back to the notion just discussed that someone interested in committing a serious felony will obey SB 249 in the first instance. While many suspects seek to avail

themselves of anonymity to commit crimes, law enforcement have techniques to pierce that veil.[8]  It is thus unclear what void the law fills.

In addition to the speech SB 249 targets, is further overbroad in terms of who it applies to. It broadly applies to all individuals who are required to register under SORA in Kentucky who had committed a criminal offense against a minor, which is either a 20-year or lifetime requirement. KRS § 17.520. Unlike statutory schemes in other jurisdictions, there is no way for someone subject to SORA to petition for relief from its requirements "even on the clearest demonstration of rehabilitation or conclusive proof of physical incapacitation." *Smith v. Doe*, 538 U.S. 84, 117 (2003) (Ginsburg, J., dissenting). As discussed further below, people are less likely to commit another crime the longer they remain in the community without a new offense, yet SB 249 is retrospective in operation, sweeping into its ambit people who are no more likely than any other member of the community to commit an offense. It further applies to people who did not commit an offense involving contact or attempted contact with a minor, and indeed applies to individuals whose crime involved no sexual or technological component whatsoever. KRS § 17.500(3)(a)

---

[8] *See United States v. Caraher*, 973 F.3d 57 (2nd Cir. 2020) (discussing Network Investigative Technique deployed to investigate and dismantle dark web CSAM site where defendant went by the pseudonym "Phillip J. Fry"); *United States v. Clark*, 24 F.4th 565 (6th Cir. 2022) (detailing undercover investigation into CSAM distribution on peer-to-peer networks and being able to identify the defendant through his IP address).

(classifying offenses against a minor that require registration, including unlawful imprisonment (KRS § 509.020), and kidnapping (KRS § 509.040) – offenses which under Kentucky law a defendant can be convicted of without proof of either a sexual or technological element).

The present challenge is fairly analogous to one that this Court considered to Michigan's anti-begging statute in *Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013). In *Speet,* this Court struck down as facially overbroad a Michigan law that criminalized panhandling. The government argued, and this Court agreed, that "prevention of fraud and duress are substantial state interests." *Id.* at 879. However, given that the anti-panhandling statute swept a substantial amount of protected First Amendment activity within its ambit, this Court struck down the statute, noting that "Michigan's interest in preventing fraud can be better served by a statute that, instead of directly prohibiting begging, is more narrowly tailored to the specific conduct, such as fraud, that Michigan seeks to prohibit." *Id.* at 880. *See also Prosecutor,* 705 F.3d at 699 *citing Schneider v. Town of Irvington,* 308 U.S. 147 (1939); *Buckley*, 525 U.S. 204-205 ("Through less problematic measures, Colorado can and does meet the State's substantial interests in regulating the ballot-initiative process.")

The analogy from the present challenge to *Speet* is plain. Kentucky has an interest in protecting children online, but like SB 249, the anti-panhandling statute targets a substantial amount of protected speech that is wholly unrelated to the

government's goals. As in *Speet*, the government's interests here "can be better served by a statute that [instead of prohibiting anonymous speech], is more narrowly tailored to the specific conduct" that the government has a legitimate interest in preventing. *Speet*, 726 F.3d at 888. As set out herein, Kentucky already has multiple and overlapping sets of laws that directly target (and impose substantial penalties for) that conduct, and some statutes which provide enhanced penalties when those crimes are committed by an individual subject to SORA.

Further, because of the criminal penalties attached and the evidence of harassment and violence with respect to SORA registrants and their family members generally—some of which Mr. Doe has experienced personally—a public self-identification requirement to access "the world of ideas," *Packingham*, 582 U.S. at 99, necessarily chills the willingness of Mr. Doe and others to avail themselves of the First Amendment, given that it attaches both a home address (along with details of a past conviction) to any opinion that one offers on social media. "Speech is chilled when an individual whose speech relies on anonymity is forced to reveal his identity as a pre-condition to expression. In other words, the First Amendment protects anonymity where it serves as a catalyst for speech." *Peterson v. Nat'l Telecomm. & Info. Admin.*, 478 F.3d 626, 632 (4th Cir.2007) (citation omitted); *see also Buckley*, 525 U.S. at 199-200; *Lamont*, 381 U.S. at 307 (finding that affirmative obligation to notify government of desire to receive communist materials in the mail

"is almost certain to have a deterrent effect, especially as respects those who have sensitive positions"); *Cf. Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 416-417 (6th Cir. 2014) (finding that Ohio law imposing disclosure requirements on petition circulators did not impermissibly chill speech where there was no record of harassment against circulators, and that disclosure was not required to be made by the circulator to the voter). In light of the foregoing, Plaintiff has a substantial likelihood of showing that the Statute chills his willingness to engage in protected First Amendment activity and is unconstitutionally overbroad by criminalizing a tremendous amount of protected speech.

Mr. Burlew advances several arguments that the court below erred in the overbreadth analysis. First, there is Mr. Burlew's argument that the "most glaring" omission is that Mr. Doe has failed to consider the "non-speech-related" applications[9] of SB 249. First Br. at 21. This argument is a bit quizzical, because by its terms, the law requires speech as the price of admission to the world of ideas for those impacted by it: to utter one's full legal name. In support of this odd proposition, he argues here, though did not argue below,[10] that a majority of people use social

---

[9] This position also renders SB 249 something of a paradox: what governmental interest is served by SB 249 if there is no speech? Perhaps Mr. Burlew would say that this prohibits the subset of those required to comply with SORA from using social media to gather information about a minor, yet this conduct is already a crime under Kentucky law.

[10] With respect to argument that most people use social media not for communicative purposes, *de novo* review on the question of likelihood of success on the merits

media to view rather than create any content. First Br. at 21-22. Perhaps that is so, perhaps not. In either case, this is irrelevant event because these "non-speech" uses of social media still implicate First Amendment freedoms. First Br. at 26. The freedom of speech encompasses the right to receive information as being "fundamental to our free society," *Stanley v. Georgia*, 394 U.S. 557, 564 (1969), and the text of the First Amendment prohibits laws which abridge the freedom of speech. U.S. CONST. amend. I. Inherent in the idea of freedom is the notion of choice: one is free to undertake a certain course of conduct, or refrain from doing so. *See Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). It is laws that abridge choice—and thus freedom—that the First Amendment regards as *anathema*. SB 249 clearly does so, irrespective of whether Mr. Doe or others might choose to not have much to say on Tuesday. Perhaps they will on Wednesday. There is not an asterisk in the Constitution that explains the government might dispose of one's freedom if a sufficient percentage of people elect not to exercise it.[11]

---

notwithstanding, arguments Mr. Burlew advances involve questions of fact he did not raise below. Mr. Doe suggests Mr. Burlew waived these arguments. *Bannister v. Knox County Board of Education*, 49 F.4th 1000, 1012 (6th Cir. 2022) ("To overturn a district court's decision based on a theory that a litigant did not present would compel the district court to 'invent' theories for the litigant, something that the Supreme Court generally discourages.") For the sake of argument, Mr. Doe assumes these facts are true, but as set out herein, make no difference to the underlying merits in either case.

[11] While Mr. Burlew is not arguing that it might properly ban social media altogether—assuming a sufficiently large percentage of people aren't posting enough content—this is the logical conclusion of his position, given that almost all

Mr. Burlew also relies on *United States v. Hansen*, 599 U.S. 762 (2023), which considered an overbreadth challenge to 8 U.S.C. § 1324(a)(1)(A), prohibiting the encouragement or inducement of illegal immigration. In *Hansen,* the parties agreed that the statute encompassed a great deal conduct that did not implicate the First Amendment, and further the Court read the statute to limit the verbs "encourage" and "induce" to be limited to their legal meaning in connection with illegal immigration, concluding that the law "reaches no further than the purposeful solicitation and facilitation of specific acts known to violate federal law," as opposed to speech generally critical of the immigration system *Id.* at 781. SB 249 isn't amenable to the same kind of limiting construction because by its terms it encompasses all speech on social media platforms, and every conceivable application of the law implicates protected First Amendment activity. Thus, unlike the law at issue in *Hansen,* the result here is quite "lopsided" in terms of the speech it criminalizes. *Id.*

Next, Mr. Burlew argues that the district court failed to consider the differences in social media platforms, citing *Moody v. NetChoice, LLC*, 144 S.Ct.

---

online offenses against minors are committed by first-time offenders as discussed below. Given the government's asserted interests in protecting those minors, it is not a stretch to see this argument marshalled in support of shuttering social media altogether, given the dangers that are present on those platforms. First Br. at 34, "[s]ocial media and online applications have become the primary tool for subjects to identify, groom, and sexually exploit children." An absurd position, to be sure, but one that flows from the argument Mr. Burlew makes nonetheless.

2383 (2024). First Br. at 24. The Supreme Court's opinion in *Moody* is no help to Mr. Burlew here. In *Moody*, the Supreme Court considered Florida and Texas laws that curtailed the ability of social media platforms to engage in content moderation. *Id.* at 2393. The Court vacated preliminary injunctions that were entered by lower courts in facial challenges, concluding that the Texas and Florida laws which regulated social media platforms could have differing impacts on those platforms, depending on the technological services and features offered by a particular platform, and that no lower court had considered these distinctions. *Moody*, 144 S.Ct. at 2398. In short, that the constitutionality of the restrictions in the Florida and Texas laws depended on the technological features of the regulated entities.

SB 249 does not regulate social media platforms. It regulates Kentucky citizens who have the same First Amendment interest. It applies in the same way to every individual convicted of an offense that is contemplated by SB 249, contrary to the law that was considered by the Supreme Court in *Moody*. *See NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1116 (9th Cir. 2024) (distinguishing *Moody* and concluding that the district court did not err with respect to challenge to a California law, given that the requirements of the law "in every application to a covered business, raise[] the same First Amendment issues.") While Mr. Burlew argues that differences in the specific crime of conviction affect the governmental interest, First Br. at 24, and complains that Mr. Doe did not introduce evidence considering these differences,

that was not how SB 249 was drafted. Since the First Amendment burdens that SB 249 imposes are wholly uninterested in those distinctions that Mr. Burlew says are important, it is unclear why either Mr. Doe or the district court should have concerned themselves with them. SB 249 is uniform in its application, and like the California law in *NetChoice, LLC* "raises the same First Amendment issues" to everyone who is subject to it. *NetChoice, LLC,* 113 F.4th at 1116. Thus, the district court's analysis did not falter on this point.

Relatedly, Mr. Burlew argues that the Court should have considered how the burden might differ depending on whether a platform is primarily focused on images, video, or text exchanges.[12] First Br. at 24. The First Amendment encompasses expressive conduct and speech whether that is accomplished by way of a video, a text exchange, or pictures. *See Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011). Mr. Burlew relies on *Moody*, but as relayed above the extent of the First Amendment interests that were implicated in *Moody* depended on the distinctions in the services that were being offered by the subjects of the regulation, and thus the attendant First Amendment impact on them. *Moody*, 144 S.Ct. at 2398. SB 249 applies across the board to all protected speech—be it by video, text, audio, images, or a combination

---

[12] Mr. Burlew suggests that platforms can be categorized as either text-based or image-based, but social media platforms contain a mixture of expressive conduct on each. For example, videos are commonplace on "text-focused platforms such as Reddit." First Br. at 5. *See* Reddit.com, /r/videos, *https://www.reddit.com/r/videos* (last accessed November 12, 2024).

thereof—on social media platforms in the same manner with respect individuals covered by it and implicates their First Amendment interests in the same way, unlike the subjects of the regulation in *Moody*.

Mr. Burlew also argues that Mr. Doe's claims cannot be as-applied because he asserts that the Mr. Doe "has not provided the necessary information to support such a challenge" – specifically, that he did not describe the circumstances of his conviction. First Br. at 18-19. In accordance with the Agreed Protective Order below, Mr. Doe's identity was provided to counsel for Mr. Burlew so that they could ensure that Mr. Doe had proper standing to bring the claims below. *Agreed Order*, RE 15, Page ID# 126. Mr. Burlew does not seriously argue that Mr. Doe does not have standing to bring his claims,[13] rather that the specific details of his conviction need be a part of the record to support an as-applied challenge, relying on *Felix v. Young*, 536 F.2d 1126 (6th Cir. 1976). *Felix* involved a challenge to a Detroit ordinance that regulated the location of cabarets that featured topless dancers, but it was unclear on the record in *Felix* exactly what kind of entertainment the plaintiff cabaret provided,

---

[13] To the extent that Mr. Burlew argues standing, he relies on *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 661 (6th Cir. 2007) for the proposition that his voluntary choice to abandon social media does not confer standing. First Br. at 36. In *ACLU*, standing was wanting because "the plaintiffs do not allege as injury that they personally, either as individuals or associations, anticipate or fear any form of direct reprisal by the government [] such as criminal prosecution[.]" *Id.* at 65. That is not the case here, given that SB 249 imposes criminal penalties for speaking anonymously on social media – an activity that Mr. Doe engages in.

and consequently whether the challenged ordinance actually infringed on the cabaret's First Amendment rights as-applied. *Id.* at 1135 ("No facts were presented either by affidavit, stipulation, or otherwise as to the exact nature of the entertainment provided at the cabaret.")

Here, by contrast, the record demonstrate SB 249 infringes on Mr. Doe's First Amendment rights. Mr. Doe verified the facts in the operative complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. *Redacted Declaration of John Doe*, RE 11-3, Page ID# 76. The facts in the operative complaint, in turn, establish that Mr. Doe is subject to the requirements of SB 249, and is engaged in the conduct that SB 249 prohibits by way of threat of criminal prosecution. The specific facts of Mr. Doe's conviction were withheld to preserve his anonymity as a plaintiff in this case—and consequently the safety of himself and his family—as well as averting the need to publicly identify himself as a precondition for vindicating his right to anonymous speech. In contrast to the record in *Felix* where it was unclear whether the entertainment offered by the cabaret was even subject to the challenged law, the facts here are sufficiently developed with respect to Mr. Doe's challenge.

### C. SB 249 is Neither Narrowly Tailored, nor is it the Least Restrictive Means of Meeting a Compelling Governmental Goal

Turning to the analysis of constitutional fit, the Statute is not the least restrictive means of meeting a governmental interest nor is it narrowly tailored. In

the preventive First Amendment context, the burden of demonstrating this constitutional fit is on the government:

> When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more than simply posit the existence of the disease to be cured. It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.

*Turner,* 512 U.S. at 664 (cleaned up). Mr. Burlew has not done so. Mr. Burlew frames the disease SB 249 cures as child predation and abuse. Mr. Doe agrees that protection of children is a compelling governmental interest, but the Statute is not the least restrictive means of meeting it, nor is it narrowly tailored, nor—as set out below—could it hope to meet that challenge. Even though it is Mr. Burlew's burden here to show the requisite constitutional fit in meeting its asserted goals, Mr. Doe turns to discuss the facts showing that it does not. Mr. Burlew's argument about the efficacy of SB 249 in meeting a compelling governmental objective depends largely on the assumptions that both the SB 249 and Mr. Burlew make about those to whom the law applies.

Start with the proposition that SB 249 applies to individuals who are engaged in acts of child predation, as Mr. Burlew supposes it does (i.e., "child predators," First Br. at 32, "the law applies to child predators, and child predators alone"). A full 96% of technologically-facilitated offenses against minors are committed by first-time offenders. *Declaration of Dr. Kristen Zgoba*, RE 11-2, Page ID# 74-75. A

similar result—95%–is true for offenses committed outside the technological context. Id. Thus, nearly every single instance of a crime that SB 249 could even hope to ward off is committed by someone to whom it would never apply. Even if one were to assume any curative effect of the law (i.e., that someone would be deterred by the misdemeanor penalties the statute provides for, yet undeterred by a decade in prison), the reach is limited out of the gate as a matter of statistical reality. Worse, by assuring parents that "child predators" could no longer avail themselves of anonymity, SB 249 provides parents a false sense of security that their children are safe online by instilling the mistaken belief—advanced by Mr. Burlew here— that the act applies to individuals engaged in acts of child predation when such a proposition is almost never going to be true.

Next, recidivism. Related to the proposition that SB 249 applies to child predators, the assumption the law and Mr. Burlew rely on is that Mr. Doe is certainly likely to commit another crime, and thus the special burdens are justified. First Br. at 33. Available evidence does not support this finding. Rather, what the evidence supports is that rates of recidivism are far lower than what is commonly believed by the public, by courts, and legislators. Indeed, that they are lower than for other classes of criminal offenses. *Declaration of Dr. Kristen Zgoba*, RE 11-2, Page ID# 68-69. This risk further declines over time to the point where people with a past registrable offense present no more of a risk of committing another offense than any

other member of the community, with the vast majority of people having crossed the desistance threshold between 10-15 years post-release. Id.

The cases that Mr. Burlew relies on this point can largely be traced back to an unscientific 1980's Psychology Today article written by a treatment provider who was marketing his services, which itself served as the basis for the Supreme Court's statistical findings about recidivism in *McKune v. Lile,* 536 U.S. 24 (2002) and *Smith v. Doe,* 538 U.S. 84 (2003).[14] The author of that Psychology Today article has since repudiated it, stating that he is "appalled" at the way the article was used.[15] The author of the Department of Justice manual from which the faulty statistics were pulled from for deployment in *McKune* and *Smith* referred to their use by the Court as "deliberate indifference." Id.

But leave the question of recidivism aside. Some people—albeit a much lower percentage than most people believe—commit subsequent offenses. To be sure, this is a serious matter. So then relevant to the constitutional analysis here is an inquiry into whether policies like SB 249 help to address it. Nearly three decades of scientific

---

[14] Ira Ellman & Tara Ellman, *"Frightening and High:" The Supreme Court's Crucial Mistake About Sex Crime Statistics*, 30 CONST. COMMNT. 495 (2015) (tracing the Supreme Court's adoption of a "frightening and high" rate of recidivism in *McKune v. Lile,* 536 U.S. 24 (2002) and *Smith v. Doe,* 538 U.S. 84 (2003), and noting that the phrase had been cited in 91 judicial opinions and 101 legal briefs).

[15] David Feige, *A 'Frightening' Myth About Sex Offenders*, New York Times, Sept. 12 2017 *accessible at https://www.nytimes.com/video/opinion/100000005415081/a-frightening-myth-about-sex-offenders.html* (last accessed November 12, 2024).

research into the question of the effectiveness of SORA—and consequently SORA-attendant restrictions like SB 249—have concluded that the answer to that question is not only do such laws not reduce recidivism, they might increase it by making reintegration a herculean task for people leaving prison, and exacerbating factors associated with criminal recidivism. *Declaration of Dr. Kristen Zgoba*, RE 11-2, Page ID# 71-73; *Snyder*, 834 F.3d at 704. This is, in part, because laws like Kentucky's SORA (and by extension, SB 249) are wholly unconcerned with whether or not someone is a risk (and whether they work to reduce any risk). The application of these burdens assumes that those subject to them are an immutable danger no matter the time that has passed, no matter the individual circumstances of the offense, no matter what evidence one might be able to show about rehabilitation. They are simply "brand[ed] moral lepers solely on the basis of a prior conviction." *Id.* at 705.

While the risk-indifferent nature of SB 249 certainly presents no, for example, Procedural Due Process impediment, *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003)*,* it necessarily undermines the ability of it to fulfill a public safety goal—and consequently, meet its constitutional fit in this First Amendment context. Evidence from other jurisdictions as to the efficacy of similar laws meant to defray online ills is instructive here. *See Cornelio v. Connecticut,* 2023 U.S. Dist. LEXIS 163106 at * 3 (D. Conn. September 14, 2023) (entering summary judgment

in favor of plaintiff on overbreadth grounds on remand from Second Circuit, striking down requirement that registrants provide internet identifiers to law enforcement. In doing so, noting that despite the law being in effect for 15 years the government was unable to point to one instance where the law assisted authorities in detecting or solving any crimes).

SB 249's overbreadth is further emphasized in light of its global retrospective operation. It applies its burdens to people who have lived for years and even decades in their communities without a new offense, and who have accomplished the unenviable task of making a life for themselves in the midst of a society that does not want them – a task that access to social media now plays a pivotal role in facilitating. *Packingham,* 582 U.S. at 108; *Moody,* 144 S.Ct. at 2393 ("Social-media platforms [] have gone from unheard-of to inescapable. They structure how we relate to family and friends, as well as to businesses, civic organizations, and governments."). In doing so, SB 249 applies its burdens to people who pose no more a risk of committing a crime than others to whom its burdens are not applied, deepening the overbreadth problems of the law. *See Doe et al. v. Snyder et al.,* 101 F.Supp.3d 722 (E.D. Mich. 2015) (striking down as overbroad under the First Amendment retrospective requirement that SORA registrants provide internet identifiers to the government).

Mr. Burlew advances several arguments in support of a finding that SB 249 law is appropriately tailored, but the Court should not be convinced by them. First, as discussed above, Mr. Burlew incorrectly categorizes SB 249 as a disclosure requirement, First Br. at 35, but this is mistaken for reasons previously discussed.[16] Mr. Burlew also argues that SB 249 is narrowly tailored because it allows those subject to it to comment anonymously on news sites and the like. First Br. at 36-37. That argument fails for the same reason it failed in *Packingham*, which cabined its analysis of the North Carolina ban solely to those sites considered social media platforms. *Packingham* 582 U.S. at 106-107. *See also Doe v. Nebraska*, 898 F.Supp.2d 1086, 1118 (D. Neb. 2012) ("Frankly, this is a little like banning the use of a telephone and then arguing that First Amendment values are preserved because the user can (perhaps) resort to a walkie-talkie.")

Mr. Burlew states that "SB 249 applies only to sex offenders," First Br. at 36, but Mr. Burlew is wrong: it applies to individuals who committed no sex offense at all. As discussed above, Kentucky law categorizes "criminal offense against a minor" as encompassing offenses that have neither a sexual or technological element. Mr. Burlew asserts that this means SB 249 applies "only to those sex offenders who pose the greatest risk to children," First Br. at 36, but—as just discussed—the application of the law is not contingent on risk, but solely on the fact

---

[16] Section II. A.

47

of a past conviction, which may or may not be a sex offense, and which may or may not have occurred decades in the past.

Finally, because the law is not narrowly tailored, it is necessarily not the least restrictive means for meeting a compelling governmental interest. There are many ways in which the law could be more narrowly focused: it could be limited only to those individuals who contacted or attempted to contact a minor online for sexual purposes, the speech that the statute encumbers could be more tightly focused instead of encompassing the universe of speech an individual might engage in online, it could be limited to prospective operation (and perhaps tethered to whether a person is on active criminal supervision, given that risk declines over time), and so on. But that is not the law the legislature passed. The law that was struck down on vagueness grounds in *Doe v. Kentucky ex rel. Tilley,* 283 F.Supp.3d 608 (E.D. Ky. 2017)—a governmental disclosure requirement—was at least a less restrictive means to accomplish the same ostensible goals of SB 249 without violating Mr. Doe's First Amendment right to anonymous speech. Whether such a law would withstand some other kind of constitutional challenge, or whether it would be effective in meeting a public safety objective is a matter for another day.

There is no mistaking that, in enacting SB 249, the government opted for a broad statute that outright bans constitutionally-protected speech on social media platforms by a subset of people required to comply with SORA, has the *de facto*

48

effect of banning all speech on them by unpopular individuals perpetually at risk of violence and reprisal, and does not appear to be able to do much at all in the service of a compelling governmental interest. For these reasons, SB 249 is facially overbroad under the First Amendment.

### D. Because of Mr. Doe's Likelihood of Success on the Merits, the District Court Did Not Abuse its Discretion in Granting a Preliminary Injunction

Lastly, Mr. Burlew argues that the district court abused its discretion in entering the injunction given the importance of the likelihood of success on the merits in a First Amendment case, but Mr. Burlew is mistaken in his belief that Mr. Doe has not shown such a likelihood. First Br. at 38-39. Mr. Doe agrees that the likelihood of success on the merits is the most important factor, *Roberts v. Neace,* 958 F.3d 409, 416 (6th Cir. 2020), but as set out above, Mr. Doe has demonstrated both in the district court and before this Court a substantial likelihood that SB 249 violates the First Amendment both facially and as-applied to Mr. Doe.

While the government does suffer an irreparable injury when it is enjoined from enforcing a piece of enacted legislation, this is not the case where—as here—the legislation in question likely violates the constitutional rights of its constituents. *Planned Parenthood Ass'n v. City of Cinncinnatti*, 822 F.2d 1390, 1400 (6th Cir. 1987). Neither Mr. Burlew nor the Commonwealth suffers any injury by being prohibited from violating the Constitution.

The remaining preliminary injunction factors also weigh in favor of affirming the injunction, especially so given that the propriety of the injunction turns on Mr. Doe's likelihood of success on the merits. *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994) For the reasons stated above, an injunction prohibiting enforcement of SB 249 will not harm the public either, as Kentucky retains harsh criminal provisions that adequately deter any unprotected speech that SB 249 is intended to guard against. Thus, the district court did not abuse its discretion in entering the injunction.

### III.   The Scope of the Injunction Should Be Expanded, Given the Likely Facial Invalidity of SB 249

This case will be remanded for further proceedings, given its interlocutory juncture. Until there is a resolution on the merits, Mr. Doe argued below – and argues now – that if the Court agrees that a preliminary injunction is proper on a finding of likely First Amendment facial invalidity, the injunction should be broadened statewide to enjoin enforcement of SB 249 in its entirety pending a resolution of this case.

Presently, Mr. Doe established that SB 249 is likely facially overbroad, yet he is the only person against whom the law may not be enforced. Many other individuals who have identical First Amendment interests to Mr. Doe risk arrest and imprisonment for availing themselves of access to the digital town square, unless they are willing to assume risk the very real threats of harassment and harm to

themselves and their family members that the operation of SB 249 imposes. This is in error.

The general rule is that injunctions should be no broader than necessary to afford relief to the parties. *Commonwealth v. Biden*, 57 F.4th 545, 557 (6th Cir. 2023). Federal courts are, however, not prohibited from granting injunctive relief benefiting an entire class even in an individual suit, when appropriate. *Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003). The scope of injunctive relief is "dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

A statewide injunction is appropriate here, as the logic of First Amendment overbreadth is grounded not solely on the rights of an individual litigant, but also others who are not parties to the action. It "allows a litigant (even an undeserving one) to vindicate the rights of the silenced, as well as society's broader interest in hearing **them** speak." *Hansen*, 599 U.S. at 770 *citing United States v. Williams*, 553 U.S. 285 (2008) (emphasis added); *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

Further, given that the First Amendment also implicates the right to listen, Mr. Doe continues to suffer harm on the likelihood that SB 249 silences voices that he is no longer able to hear. *Richmond Newspapers, Inc. v. Virginia.,* 448 U.S. 555 (1980) *citing Hague v. CIO,* 307 U.S. 496 (1939); *Packingham*, 582 U.S. at 104. While Mr.

Doe does not bring a traditional right-to-listen claim,[17] he nonetheless continues to suffer First Amendment harm in light of the purpose and rationale of overbreadth, which is irreparable injury. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

John Doe has established that SB 249 likely violates the First Amendment, both facially and as-applied. The "extent of the violation," *Califano*, 442 U.S. at 702, is that *the law*—not in its application to Mr. Doe, but by its plain terms—"directly restricts protected First Amendment activity and does not employ means narrowly tailored to serve a compelling governmental interest." *Speet,* 726 F.3d at 873. SB 249 is just as unconstitutional in Daviess County as it is in all of Kentucky's 120 counties: from Franklin to Fayette, Jefferson to Jessamine, Harlan to Hopkins.

The instant request is born out of apparent necessity, as the Kentucky Attorney General enjoys immunity under *Ex Parte Young*, 209 U.S. 123 (1908), for laws like SB 249. *Morevac v. Cameron*, 2023 U.S. Dist. LEXIS 211056 (E.D. Ky. November 28, 2023). While Mr. Doe sought to distinguish this Court's decision in *Fox v. Saginaw Cnty.,* 67 F.4th 284 (6th Cir. 2023) to certify a defendant class, he was unsuccessful in doing so.

---

[17] In light of the anonymous speech that SB 249 forbids, the possibility of even being able to do so is vanishingly small unless other anonymous individuals are forthcoming on social media about their requirement to comply with SORA, as Mr. Doe is.

Thus, Mr. Doe has two apparent options to seek a statewide injunction. Were Mr. Doe to join an additional 119 plaintiffs who are covered by SB 249 and an additional 119 County Attorneys who enforce it, no one would be able to dispute that he would be entitled to the relief that he seeks on the strength of the overbreadth violation that he has already shown. Yet this is a monumental waste of both judicial and taxpayer resources, and an arduous task for litigants who lack institutional funding. Should Mr. Doe not do so, and should this Court conclude that the federal courts are without authority in this context to enter a statewide injunction, it risks a multiplicity of both civil and criminal litigation – further draining judicial and taxpayer resources. *See Poe v. Labrador*, 2023 U.S. Dist. LEXIS 229332 at *1199 (D. Idaho, December 26, 2023) (noting likelihood of "follow-on" lawsuits absent statewide relief).

The second option is Mr. Doe's instant request. In this First Amendment context, Courts and the public have a strong interest in enjoining the enforcement of laws which are likely unconstitutional – in particular with respect to overbreadth claims. *See Garcia v. Stillman*, 2023 U.S. Dist. LEXIS 85111 at *8 (S.D. Fla. May 15, 2023) *citing FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290 (11th Cir. 2017) (noting exception to general rule regarding scope of injunctions in the context of First Amendment claims: "[a]s Plaintiffs correctly argue, it is routine,

appropriate, and necessary for a district court to preliminarily enjoin Florida from enforcing a law that likely violates the First Amendment.")

This Court's decision in *L.W. v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023) is instructive. *Skrmetti* considered two lower court injunctions—from Tennessee and Kentucky—involving the application of state laws related to the treatment of gender dysphoria. Both lower courts concluded that the laws facially violated the constitution, and issued statewide injunctions. *Id.* at 469. The district court in the Tennessee case noted that a "state-wide injunction is typically an appropriate remedy" when a law is facially invalid. *L.W. v. Skrmetti*, 679 F.Supp.3d 668, 716 (M.D. Tenn. 2023).

This Court overturned those injunctions, finding that there was not a likelihood of success on the merits of the underlying constitutional claims. *Skrmetti*, 83 F.4th at 479. In doing so, this Court had occasion to discuss the appropriateness of the scope of the injunctions issued by the Tennessee and Kentucky courts. This Court regarded an injunction that extended beyond the parties in *Skrmetti* with skepticism, noting that the asserted necessity of it turned on "speculation" in regards to the actions of third-parties, indicated that "privacy interests alone" were insufficient to justify a statewide injunction, and that plaintiffs "fail[ed] to explain why a class action would not solve these problems." *Id.* at 490. None of the concerns that this Court highlighted in *Skrmetti* are present here.

The facial nature of the constitutional violation here does not turn on speculation about third-parties, given that it criminalizes a substantial amount of protected speech. *See Holder v. Humanitarian Law Project*, 130 S.Ct. 2705, 2717 (2010). The constitutional concerns undergirding the violation that Mr. Doe has established extend beyond privacy concerns the plaintiffs raise in *Skrmmetti*, as an overbreadth claim necessarily implicates the free speech rights of absent parties. Further, Mr. Doe has explained why a class action in relation to SB 249 is insufficient, given *Fox*, and the fact that a proper defendant for a law like SB 249 is a local prosecutor like Mr. Burlew. Without a doubt, injunctions that extend beyond the parties are rightfully a rare feature in the federal law, but it is respectfully suggested that this is one such circumstance where it is not only proper, but necessary in order to safeguard one of "our most precious freedoms." *Edenfield*, 507 U.S. at 777.

Should the Court conclude that the preliminary injunction factors weigh in Mr. Doe's favor, then Mr. Doe suggests that those same factors would similarly weigh in favor of granting a statewide injunction as set out above. Thus, Mr. Doe respectfully requests that this Court order that SB 249 be preliminarily enjoined *in toto*.

CONCLUSION

"Even convicted criminals—and in some instances especially convicted criminals—might receive legitimate benefits from these means of access to the world of ideas, in particular if they seek to reform and pursue lawful and rewarding lives." *Packingham*, 582 U.S. at 108.

There need be no mistaking Mr. Doe's arguments here. He does not suggest he did not commit a serious crime, nor that he was undeserving of punishment. He was punished, and that punishment concluded some years ago. Nor does he suggest that the interest of Mr. Burlew and the Commonwealth in protecting the public—which include Mr. Doe and his wife and his children—is anything but legitimate and laudable. But SB 249 is ill-equipped to meet this interest, and instead operates to place unique First Amendment burdens on a singularly unpopular group of people. The ultimate effect of the legislation is to accomplish as a matter of practicality that which our First Amendment forbids as a matter of law. This, in turn, undermines the ability of those subject to the law, like Mr. Doe, to do the things we say we want: to "reform and pursue lawful and rewarding lives." *Id.* Mr. Doe established below, and establishes once more here, that SB 249 likely violates the First Amendment both facially and as-applied.

While injunctions that extend beyond the parties are rare and extreme measures, Mr. Doe suggests that this is one such circumstance where it is merited.

This is because of the nature of the likely facial violation that he has established which owes to the fatally-infirm features of SB 249 itself, as opposed to any individual circumstance that Mr. Doe brings to the table. Without this relief, there are few options for Mr. Doe to fully vindicate his rights on an overbreadth claim, which further necessarily involve the rights of parties not before the Court.

For the foregoing reasons, Mr. Doe respectfully requests that this Court affirm the district court's preliminary injunction. Should this Court agree with Mr. Doe that SB 249 likely facially violates the First Amendment, Mr. Doe further respectfully requests that this Court enjoin enforcement of SB 249 statewide pending a resolution on the merits, or to remand with instructions for the district court to do so.

Respectfully submitted,

/s/ Guy Hamilton-Smith
Law Office of Guy Hamilton-Smith, PLLC
1707 L Street NW, Suite 1030
Washington, D.C. 20036
202.681.5157
guy@guyhamiltonsmith.com
*Counsel for John Doe*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. Proc. 32 (g)(1) and 28.1(e)(2)(B)(i), excluding those portions designated in 6 Cir. R. 32(b)(1), counsel certifies that the foregoing Principal and Response Brief of Plaintiff-Appellee / Cross-Appellant John Doe contains 14,240 words, per the word count feature of the software that was used to prepare the brief. Counsel further certify that this brief was prepared using 14-point Times New Roman font, in compliance with Fed. R. App. Proc. 32(a)(5) and 32(a)(6)

/s/ Guy Hamilton-Smith

## CERTIFICATE OF SERVICE

Counsel certifies that the foregoing Principal and Response Brief of Plaintiff-Appellee & Cross-Appellant John Doe was filed via the Court's CM/ECF system on this the 14th day of November, 2024 which will cause the same to be served on all parties in this action.

/s/ Guy Hamilton-Smith

**ADDENDUM**

## Designation of Documents

*First Amended Verified Class Complaint,* RE 11, Page ID# 53

*Declaration of Dr. Kristen Zgoba,* RE 11-2, Page ID# 73

*Verified Class Complaint,* RE 1, Page ID# 1

*Motion for Preliminary Injunction,* RE 12, Page ID# 77

*Motion for Class Certification*, RE 13, Page ID# 103

*Defendant's Response and Cross Motion,* RE 19, Page ID# 136

*Plaintiff's Consolidated Reply and Response Brief*, RE 20, Page ID# 167

*Memorandum Opinion and Order*, RE 26, Page ID# 233

*Memorandum Opinion and Order,* RE 27, Page ID# 247

*Defendant's Notice of Appeal*, RE 29, Page ID# 260

*Emergency Motion to Modify Pending Appeal,* RE 30, Page ID# 262

*Defendant's Response*, RE 31, Page ID# 265

*Notice of Cross-Appeal*, RE 34, Page ID# 281

*Order*, RE 37, Page ID# 296

**Text of SB 249 (KRS § 17.444)**

**17.544     Restrictions on use of social media platform by registrants -- Retroactivity – Penalties.**

(1)    As used in this section, "social media platform":

    (a)    Means a website or application that is open to the public, allows a user to create an account, and enables users to do all of the following:

        1.    Interact socially with other users within the confines of the website or application;

        2.    Construct a public or semipublic profile for the purpose of signing into and using the website or application;

        3.    Populate a list of other users with whom an individual shares or has the ability to share a social connection within the website or application;  and

        4.    Create or post content viewable by others, including on message boards, chat rooms, video channels, direct or private messages, or chats, or on a landing page or main feed that presents the user with content generated by other users; and

    (b)    Does not include:

        1.    A broadband internet access service as defined by the Federal Communications Commission;

        2.    An electronic mail service;

        3.    A search engine service;

        4.    A cloud storage or cloud computing service;

        5.    An online service, application, or website in which interaction between users is limited to reviewing products offered for sale by electronic commerce or commenting on reviews posted by other users; or

        6.    An online service, application, or website:

            a.    That consists primarily of information or content that is not user- generated but is preselected by the provider; and

            b.    For which any chat, comments, or interactive functionality is incidental to, directly related to, or dependent upon the provision of the content described by subdivision a. of this subparagraph.

(2)    A registrant who has committed a criminal offense against a victim who is a

minor shall not create or have control of an account on a social media platform unless the account displays his or her full legal name.

(3)   This section shall apply retroactively.

(4)   Any person who violates subsection (2) of this section shall be guilty of a Class A misdemeanor for the first offense, and a Class D felony for a second or subsequent offense.