Case Nos. 24-5669, 24-5743

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

JOHN DOE,

*Plaintiff-Appellee/Cross-Appellant,*

v.

JOHN BURLEW,

*Defendant-Appellant/Cross-Appellee.*

On Appeal from the United States District Court
for the Western District of Kentucky
Case No. 4:24-cv-00045 (Stivers, J.)

## Response and Reply Brief for
## Appellant/Cross-Appellee John Burlew

Matthew F. Kuhn
  *Solicitor General*
John H. Heyburn
  *Principal Deputy Solicitor General*

Office of Kentucky Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov
Jack.Heyburn@ky.gov

*Counsel for Appellant/Cross-Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... ii

INTRODUCTION.................................................................................. 1

SUMMARY OF ARGUMENT ............................................................. 3

STANDARD OF REVIEW................................................................... 4

ARGUMENT ......................................................................................... 4

I.    Doe fails to rescue his facial-overbreadth claim. .................................. 4

    A.    Doe concedes that he did not raise an as-applied claim in his
         complaint. ........................................................................... 4

    B.    Doe's arguments for SB 249's facial invalidity are unavailing. ................... 6

II.   SB 249 is also constitutional in its speech-related applications to Doe. ............ 15

    A.    SB 249 is a disclosure requirement that receives exacting, or
         intermediate, scrutiny. ............................................................ 15

    B.    Doe concedes that the Commonwealth has a compelling
         interest in enacting SB 249. ...................................................... 23

    C.    SB 249 furthers this interest and is narrowly tailored.............................. 24

III.  The Court should not order the district court to expand the injunction to
    cover non-parties. .......................................................................... 29

CONCLUSION ...................................................................................... 33

CERTIFICATE OF COMPLIANCE .......................................................... 34

CERTIFICATE OF SERVICE ................................................................. 35

# TABLE OF AUTHORITIES

## Cases

*ACLU of Ky. v. McCreary Cnty.*,
  607 F.3d 439 (6th Cir. 2010) ............................................................................... 4

*ACLU v. Miller*,
  977 F. Supp. 1228 (N.D. Ga. 1997) ................................................................... 21

*Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*,
  459 U.S. 87 (1982) ................................................................................. 19, 20, 21

*Buckley v. Am. Const. L. Found., Inc.*,
  525 U.S. 182 (1999) .................................................................................. passim

*Buckley v. Valeo*,
  424 U.S. 1 (1976) .............................................................................................. 19

*Chelf v. Prudential Ins. Co. of Am.*,
  31 F.4th 459 (6th Cir. 2022) .............................................................................. 9

*Commonwealth v. Biden*,
  57 F.4th 545 (6th Cir. 2023) ................................................................... 3, 29, 32

*Coppolino v. Noonan*,
  102 A.3d 1254 (Pa. Comm. Ct. 2014) ............................................................. 25

*Cornelio v. Connecticut*,
  691 F. Supp. 3d 529 (D. Conn. 2023) .................................................... 25, 26, 27

*Cutshall v. Sundquist*,
  193 F.3d 466 (6th Cir. 1999) ........................................................................... 21

*Doe #1 v. Lee*,
  518 F. Supp. 3d 1157 (M.D. Tenn. 2021) ........................................................ 25

*Doe v. Harris*,
  772 F.3d 563 (9th Cir. 2014) ....................................................................... 25, 26

*Doe v. Rausch,*
  461 F. Supp. 3d 747 (E.D. Tenn. 2020) ........................................ 25

*Doe v. Shurtleff,*
  628 F.3d 1217 (10th Cir. 2010) .................................................. 25

*Doe v. Prosecutor,*
  705 F.3d 694 (7th Cir. 2013) ..................................................... 28

*Felix v. Young,*
  536 F.2d 1126 (6th Cir. 1976) ..................................................... 6

*Hill v. Colorado,*
  530 U.S. 703 (2000) ................................................................. 22

*Jaynes v. Commonwealth,*
  666 S.E.2d 303 (Va. 2008) ........................................................ 21

*L. W. by & through Williams v. Skrmetti,*
  73 F.4th 408 (6th Cir. 2023) ................................................passim

*Lamont v. Postmaster General,*
  381 U.S. 301 (1965) ................................................................. 21

*Libertarian Party of Ohio v. Husted,*
  751 F.3d 403 (6th Cir. 2014) ..................................................... 12

*McIntyre v. Ohio Elections Comm'n,*
  514 U.S. 334 (1995) ................................................................. 21

*Mills v. Barnard,*
  869 F.3d 473 (6th Cir. 2017) ....................................................... 9

*Moody v. NetChoice, LLC,*
  603 U.S. 707 (2024) ............................................................1, 6, 7

*Murthy v. Missouri,*
  603 U.S. 43 (2024) ................................................................. 32

*Packingham v. North Carolina,*
  582 U.S. 98 (2017) ..........................................................7, 10, 24

*Peterson v. Nat'l Telecomms. & Info. Admin.*,
  478 F.3d 626 (4th Cir. 2007) ................................................................. 12

*Sharpe v. Cureton*,
  319 F.3d 259 (6th Cir. 2003) .............................................................. 31, 33

*Smith v. Doe*,
  538 U.S. 84 (2003) .................................................................................. 15

*Sorrell v. IMS Health*,
  564 U.S. 552 (2011) ................................................................................ 24

*Speet v. Schuette*,
  726 F.3d 867 (6th Cir. 2013) .................................................................. 14

*United States v. Dotson*,
  324 F.3d 256 (4th Cir. 2003) .................................................................. 27

*United States v. Hamm*,
  952 F.3d 728 (6th Cir. 2020) .................................................................... 9

*United States v. Hansen*,
  599 U.S. 762 (2023) ........................................................................ 9, 10, 15

*United States v. Osborne*,
  807 F. App'x 511 (6th Cir. 2020) ............................................................. 5

*United States v. Reed*,
  993 F.3d 441 (6th Cir. 2021) .................................................................... 9

*United States v. Weisser*,
  417 F.3d 336 (2d Cir. 2005) .................................................................... 27

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ................................................................................ 22

*Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*,
  536 U.S. 150 (2002) ................................................................................ 18

*White v. Baker*,
  696 F.Supp.2d 1289 (N.D. Ga. 2010) ...................................................... 25

*Whole Women's Health v. Jackson*,
  141 S. Ct. 2494 (2021) .......................................................................3, 32

*Yee v. Escondido*,
  503 U.S. 519 (1992)................................................................................. 9

**Constitutions and Statutes**

Ky. Rev. Stat. § 17.500 ........................................................................... 10

Ky. Rev. Stat. § 17.544 ............................................................................. 7

U.S. Const. art. III, § 2............................................................................ 30

**Other Authorities**

Alper & Durose, *Recidivism of Sex Offenders Released from State Prison:*
  *A 9-Year Follow-Up (2005-14)*, Bureau of Justice Statistics (May 2019),
  https://tinyurl.com/bdhxrhwh................................................................ 23

*Names allowed on Facebook*, Facebook Help Center,
  https://tinyurl.com/ytwud8m9 (last visited Dec. 16, 2024) ...................... 14

*Groups*, Facebook Help Center,
  https://tinyurl.com/56ka5d44 (last visited Dec. 16, 2024).......................... 8

Katherine Blunt, *The Influencer Is a Young Teenage Girl. The Audience is 92% Adult Men*,
  Wall Street Journal (June 15, 2024), https://tinyurl.com/3hd9j7b6 ........................ 28

*Names allowed on profiles*, LinkedIn Help,
  https://tinyurl.com/5ebnkwcf (last visited Dec. 16, 2024)......................... 14

## INTRODUCTION

Few issues are of greater importance than protecting children in the evolving world of social media. The Kentucky General Assembly addressed part of this problem with Senate Bill 249. By requiring child sex offenders to display their names on any social-media account they have created or control, the law gives parents an important tool to protect their children from potential predators on social media. This commonsense bill drew broad bipartisan support in the Commonwealth. It unanimously passed both chambers of the General Assembly and was signed into law by Kentucky's Governor. In a time of often deep political divisions, SB 249 is a shining example of how legislators of all political stripes can come together in support of a common goal: protecting children.

In the decision below, the district court found HB 249 unconstitutional on its face. Although the injunctive relief issued by the district court was properly limited to the parties, John Doe failed to carry his heavy burden of demonstrating why he is likely to succeed on his sweeping facial claim. As the Supreme Court just reminded us, "facial challenges threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (citation omitted). This case is a prime example. SB 249 is a new law that may raise different constitutional questions depending on the particular individual, social-media platform, and type of speech to which it applies. County Attorney John

1

Burlew maintains that the law is constitutional in all respects. But the key point here is that any constitutional challenge to SB 249 should proceed in the normal course—addressing issues in a case-by-case manner.

Even if Doe had proceeded in this targeted way (he did not), his challenge would still fail. SB 249 is a disclosure requirement that receives a form of intermediate scrutiny known as exacting scrutiny. Doe misunderstands SB 249 in arguing that it requires contemporaneous disclosure of his name with all his speech on social media. That may be true if the law required Doe to display his name in his social-media *username*. But the law only requires that he display his name somewhere on his *account*. As a result, Doe's reliance, for example, on the Supreme Court's decision striking down an in-person name-badge requirement for individuals engaged in door-to-door political speech is inapt. *See Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999). In sum, SB 249 passes exacting scrutiny because there is a substantial relation between the disclosure requirement and the government's interest in protecting children from child predators.

Lastly, Doe's cross-appeal is without merit. Even if Doe is entitled to an injunction, the district court did not abuse its discretion in limiting that relief to the parties. Doe's request that all 120 County Attorneys be enjoined from enforcing SB 249 statewide would "exceed[] the norms of judicial power." *L. W. by & through Williams v. Skrmetti*, 73 F.4th 408, 415 (6th Cir. 2023).

## SUMMARY OF ARGUMENT

Burlew summarized the arguments at issue in his appeal in his opening brief (at 13–16). As it relates to Doe's cross-appeal, Burlew's arguments are summarized as follows.

This Court has made clear in recent years that an injunction "that goes beyond the injuries of a particular plaintiff to enjoin government action against nonparties exceeds the norms of judicial power." *L. W.*, 73 F.4th at 415; *see also Commonwealth v. Biden*, 57 F.4th 545, 557 (6th Cir. 2023). Yet that is precisely what Doe requests in his cross-appeal: for the Court to expand the district court's injunction so that *all* 120 County Attorneys—including 119 non-parties—are enjoined from enforcing SB 249 against all child sex offenders in the Commonwealth—all of whom are non-parties except Doe. This is an "extreme" request, as Doe acknowledges (at 56).

Doe's arguments for expanding the injunction are unavailing. He claims it is necessary to protect his right to listen to other child sex offenders online, but he never pressed that theory below. He effectively urges the Court to treat this case as if the district court had certified plaintiff and defendant classes. But Doe failed on both class-certification motions in the district court This Court also has no authority to enjoin "laws themselves" as opposed to the "individuals tasked with enforcing" them. *Whole Women's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021).

3

In sum, none of Doe's arguments provide reason for the Court to transgress the traditional boundaries of equitable relief. The district court thus did not abuse its discretion by tailoring the injunction "in a party-specific and injury-focused manner." *L.W.*, 73 F.4th at 415.

## STANDARD OF REVIEW

In his opening brief, Burlew outlined (at 16) the standard of review as to whether the district court properly issued an injunction. This Court reviews Doe's cross-appeal—which goes to the "scope of injunctive relief"—for abuse of discretion. *ACLU of Ky. v. McCreary Cnty.*, 607 F.3d 439, 445 (6th Cir. 2010).

## ARGUMENT

## I.    Doe fails to rescue his facial-overbreadth claim.

Doe fails to explain how he met his burden in the district court of establishing that SB 249 is facially unconstitutional under the First Amendment.

### A.    Doe concedes that he did not raise an as-applied claim in his complaint.

To begin, Doe does not seriously contest Burlew's contention (at 17–18) that he did not raise an as-applied challenge to SB 249 in his complaint. To be sure, he baldly claims (at 2) that he "brought facial and as-applied claims below." *See also* Doe Br. 7, 56. But he does not point to any language in his complaint to back up this assertion. He does not engage with Burlew's arguments at (at 17–18) that his claims were framed entirely in facial terms and (at 18) that his trial strategy was premised on his assertion

of facial claims. Nor does he address the district court's finding that he did not bring an as-applied claim. Mem. Op. & Order, R.26, PageID#238 n.2. By failing to put forth any meaningful argument that he raised an as-applied claim in his complaint, Doe has conceded the issue. *See, e.g.*, *United States v. Osborne*, 807 F. App'x 511, 526 (6th Cir. 2020) ("We may treat Samuel's failure to respond to the Government's assertions as a concession of their validity.").

Instead, Doe argues (at 40-41) that he provided enough information about his convictions that he *could have* asserted an as-applied challenge. But because he does not seriously dispute that he did not even raise an as-applied challenge, this point is academic. Regardless, Doe is wrong about this alternative argument. Doe highlights (at 41) the bare-bones information he provided about his convictions—that he was "convicted in 2015 of felony offenses related to CSAM in Kentucky state court, and received a five year suspended sentence," Am. Compl., R.11, PageID#53—but admits that the "specific facts of [his] convictions were withheld." These "specific facts" are essential to assessing an as-applied challenge. As discussed in the next subsection, without knowing the underlying facts of his convictions, how many convictions he

received, and the specific statutes he was convicted under, among other things, the Court fully evaluate an as-applied claim.[1]

**B. Doe's arguments for SB 249's facial invalidity are unavailing.**

Doe does not have a good answer for his, and the district court's, failure to conduct a proper facial analysis of SB 249's constitutionality.

**1.** Doe gives short shrift to his responsibility to catalogue the law's applications at step one of the facial analysis. *Moody*, 144 S. Ct. at 2398 ("The first step in the proper facial analysis is to assess the state law['s] scope."). He argues (at 29) that it "is unnecessary" "to list every possible instance of constitutionally-protected speech that the law prohibits." But he cites nothing for this assertion beyond his own "respectful[] suggest[ion] that this is unnecessary." Doe Br. 29. To the contrary, the Supreme Court has directed that when addressing a facial challenge "court[s] must evaluate the *full scope* of the law's coverage." *Moody*, 144 S. Ct. at 2409 (emphasis added).

Rather than grapple with SB 249's scope, Doe simply asserts (at 28) that SB 249's scope is the same as the law addressed in *Packingham*. Not so. As the Supreme Court recognized, "the North Carolina statute at issue" there had "broad wording" that

---

[1] Doe recognizes (at 40–41) that *Felix v. Young*, 536 F.2d 1126 (6th Cir. 1976), involved different facts. But the legal point made in that case applies here: a plaintiff bringing an as-applied constitutional challenge to a statute must develop "an adequate factual basis in the record" demonstrating why the challenged law or regulation is unconstitutional. *Id.* at 1135.

"might well bar access not only to commonplace social media websites but also to websites as varied as Amazon.com, Washingtonpost.com, and Webmd.com." *Packingham v. North Carolina*, 582 U.S. 98, 106 (2017). Although there is some overlap between the laws, they are not coextensive. North Carolina's law was much broader than SB 249's circumscribed definition of social-media platforms.[2]

**2.** Doe fares no better at step two—"decid[ing] which of the law[']s applications violate the First Amendment, and . . . measur[ing] them against the rest." *Moody*, 144 S. Ct. at 2398. He disputes (at 35) that SB 249 has non-speech applications. But even if displaying one's legal name on their social-media account is speech, that would only be one instance of speech. That individual does not then "utter [their] full legal name" every time they use their account to view (or even post) social-media content.

As discussed further below, *infra* 16, Doe's argument appears to rest on a misunderstanding of what the law requires of him. Doe need not display his name in his social-media *username*. Rather, he can satisfy SB 249 by displaying his name anywhere on his social-media *account*. Ky. Rev. Stat. § 17.544(2) (requiring that the social-media "*account* displays his or her full legal name" (emphasis added)). This requirement would be satisfied, for example, if he displayed his name in the bio section of his account

---

[2] To be sure, the Court assumed, *arguendo*, that the law applied more narrowly to just traditional social-media platforms. But because the burden of North Carolina's law (a complete ban on using social media) was so much more severe than SB 249, the Court's analysis of the law has little applicability here.

profile, which for most social-media platforms is publicly accessible but is not displayed in full every time a user posts content. Doe's name, therefore, need not accompany all his speech on social media. And he certainly does not "speak" his name every time he browses content on social media.

Contrary to Doe's assertion (at 35 n.9), SB 249 still serves a compelling interest even for those who do not use social media for speech. It still acts as a deterrent for these individuals even if they are not presently using their accounts for speech. And it still allows parents to proactively identify and protect their children from child predators in some cases. For example, many social-media platforms have groups that users can join. Facebook is a prominent example. *See Groups*, Facebook Help Center, https://tinyurl.com/56ka5d44 (last visited Dec. 16, 2024) ("Groups are a place to connect, learn and share with people who have similar interests."). SB 249 allows parents to identify whether any member of a group are child sex offenders—even if they are not currently using their account to speak—and can take any necessary precautions vis-à-vis those groups.

Doe also takes issue (at 35–36) with Burlew's citation of statistics about Americans' social-media habits. Although Burlew did not cite these specific statistics below, he argued that Doe had "not demonstrated that SB 249 reaches a substantial amount of constitutionally protected conduct." Opp'n and Mot. for Summ. J., R.19, PageID#152. These statistics relate to and refine that argument. It is well established,

8

moreover, that "parties are not limited to the precise arguments they made below." *Yee v. Escondido*, 503 U.S. 519, 534 (1992). This Court "typically find[s] no forfeiture on appeal when," as here, "'a particular authority or strain of the argument was not raised below, as long as the issue itself was properly raised.'" *United States v. Reed*, 993 F.3d 441, 453 (6th Cir. 2021) (quoting *Mills v. Barnard*, 869 F.3d 473, 483 (6th Cir. 2017)); *see also United States v. Hamm*, 952 F.3d 728, 742 (6th Cir. 2020) (similar). Because Burlew raised this issue below, he "may formulate[] any argument [he] like[s] in support of that claim here." *Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 468 (6th Cir. 2022) (citation omitted).

In any event, it was Doe's burden below to catalogue all SB 249's applications, including those that do not implicate speech. Doe's failure to address SB 249's non-speech applications is a critical reason why his facial claim cannot be sustained. Doe argues (at 37) that this case differs from *Hansen* because there "the parties agreed that the statute encompassed a great deal [of] conduct that did not implicate the First Amendment." Agreement or not, for the reasons discussed above and in Burlew's opening brief (at 21–23), SB 249 "encompasses a great deal of nonexpressive conduct." *United States v. Hansen*, 599 U.S. 762, 782 (2023). This fact precludes Doe from establishing on this record the sort of "lopsided ratio" between the "law's unconstitutional applications" and its "lawful sweep" that is required to administer the

"strong medicine" of holding a law facially unconstitutional. *Id.* at 770 (citation omitted).[3]

**3.** Aside from SB 249's non-speech applications, Doe's other arguments for the law's overbreadth are unavailing.

He argues (at 32) that SB 249 is "overbroad in terms of who it applies to." But the law has a narrow, and constitutionally permissible, classification: It applies only to registered sex offenders who have committed serious criminal offenses against minors. It is therefore more narrowly tailored than the laws in *Packingham* and all of Doe's out-of-circuit internet-identifier cases, *see* Doe Br. 20–21; *infra* 24–26, which apply to all registered sex offenders.[4]

---

[3] Doe also claims (at 36) that even if he doesn't use social media for speech, SB 249 still restricts his "right to receive information." But Doe did not allege a violation of his right to listen to, or receive information from, other child sex offenders in his complaint. And, in any event, even if his name is displayed in his profile, Doe can still browse content on most social-media platforms without alerting the publishers of that content, thus preserving his anonymity. His discussion of his purported right to receive information, therefore, does not advance his facial claim in the slightest.

[4] Doe quibbles (at 47–48) with how Burlew describes the individuals covered by SB 249, noting that the law applies to some individuals who have not committed sex crimes against children. This is true. But it does not mean that the law is not narrowly tailored. The non-sex crimes it covers are serious offenses—kidnapping and unlawful imprisonment. Ky. Rev. Stat. § 17.500(3)(a). Burlew acknowledged in his opening brief (at 7–8) that individuals who committed these crimes against children are subject to SB 249's disclosure requirement. The other enumerated crimes are sex offenses, and committing any of these crimes against minors requires a person to register as a sex offender. So, as shorthand, Burlew referred (at 7) to these individuals as "child predators" or "child sex offenders."

Doe cannot justify the district court's failure to analyze how individuals with different convictions affects the constitutional analysis. He asserts (at 39) that SB 249 is "wholly uninterested in those distinctions." True enough. But that does not mean that the constitutional analysis is uninterested in them. As discussed in more depth in the next section, an as-applied challenge to SB 249 would need to assess how the law furthers the Commonwealth's interest in protecting children from sexual abuse with respect to the individual plaintiff. Although Burlew maintains that the law is constitutional as applied to all individuals, the constitutional analysis need not be identical from person to person. To succeed on a facial challenge, Doe cannot simply ignore these distinctions.

Relatedly, Doe asserts (at 34) that SB 249 "chills the willingness of Mr. Doe and others to avail themselves of the First Amendment." But the preliminary-injunction record is devoid of any evidence about anyone other than Doe. As Doe's cases demonstrate, this sort of evidence is critical to the success of a facial challenge to a disclosure requirement. In *Buckley v. American Constitutional Law Foundation*, the Supreme Court cited evidence that the plaintiffs introduced about how the challenged law chilled the speech of nonparties in sustaining a First Amendment challenge. 525 U.S. at 198–99. On the flip side, in *Libertarian Party of Ohio v. Husted*, this Court reviewed the "evidentiary record in the district court" and found that the "the relevant evidence of chill . . . can best be described as scant." 751 F.3d 403, 415–16 (6th Cir. 2014). Doe's

11

evidentiary record of chill to non-parties is more like *Husted* than *Buckley*. This Court should therefore hold, as it did in *Husted*, that the plaintiff is "not likely to succeed on the merits of [his] First Amendment overbreadth challenge." *Id.* at 421.[5]

Doe also claims (at 37–40) that the many differences between social-media platforms are irrelevant. But Doe proves Burlew's point (at 39 n.12) by noting the complexity of and differences between various social-media platforms. Burlew does not argue that social-media platforms can be rotely "categorized as either text-based or image-based." It is true, as Doe notes (at 39), that these platforms "contain a mixture of expressive conduct on each." This diversity of platforms, however, is why is it so important in the context of a facial challenge to analyze these distinctions with a fine-tooth comb and examine whether SB 249 is unconstitutional as applied to speech on all platforms. That is *Doe's* burden. It suffices for Burlew to point out the many applications of SB 249 that Doe did not catalogue and analyze.

---

[5] The Fourth Circuit's decision in *Peterson v. National Telecommunications & Information Administration*, 478 F.3d 626 (4th Cir. 2007), held that the plaintiff lacked standing to claim that a federal law infringed on his ability to speak anonymously when he had already voluntarily disclosed his identity. Burlew has not argued that Doe lacks standing here. But this issue could arise in an as-applied challenge to SB 249 if the plaintiff voluntarily disclosed their identity on social media or is required to do so by the platforms' terms of service. *See infra* 14 (discussing social media platforms that require members to user their real names).

12

To illustrate how these differences in individuals, speech, and social-media platforms could affect the constitutional analysis, consider a couple hypotheticals. SB 249 would apply to both of these individuals:

- An individual who was convicted of kidnapping and raping a minor. This individual has a limited online presence. He has a Reddit account but has never used it to post content.

- An individual who was convicted of possessing several dozen CSAM images and soliciting a minor on Facebook. This individual regularly uses all manner of social media—including LinkedIn, Facebook, X, and Instagram—to post about politics, sports, and culture and to share images and videos about his life.

Burlew maintains that SB 249 would be constitutional as applied to both individuals. But the variety of questions that could be relevant in as-applied challenges counsel against declaring the law facially unconstitutional in one fell swoop.

For example, does SB 249 further the Commonwealth's interest to a greater extent in the first or the second example? The first individual was arguably convicted of more serious offenses, at least in terms of the duration of a prison sentence that may arise from them. But given his lack of an online presence, the law may arguably be less effective as applied to him. The second individual, moreover, could argue that SB 249 places a greater burden on his speech. On the flip side, however, SB 249 may be more

13

effective as to him, given his history of using the internet to solicit minors. One other wrinkle a court must consider is that several of the platforms used by the second individual—including LinkedIn and Facebook—already require members to use their real names. *See Names allowed on profiles*, LinkedIn Help, https://tinyurl.com/5ebnkwcf (last visited Dec. 16, 2024) ("When registering on our site, LinkedIn does not allow members to use pseudonyms [or] fake names."); *Names allowed on Facebook*, Facebook Help Center, https://tinyurl.com/ytwud8m9 (last visited Dec. 16, 2024) ("The name on your profile . . . should also appear on an ID or document from our ID list."). The second individual would therefore need to explain how SB 249 harms him with respect to his activities on those platforms.  (A plaintiff who *only* uses those platforms would face even more challenging questions about establishing an Article III injury.)

The point is that even if the Court has concerns about certain of SB 249's applications, this law does not lend itself to a facial challenge—at least not on this record. Doe argues (at 33) that SB 249 is similar to the anti-begging statute in *Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013). But that statute categorically banned one type of speech: begging. And because it "simply ban[ned] an entire category of activity that the First Amendment protects," the facial analysis was far more straightforward. *Id.* at 879. As discussed above, SB 249 potentially raises a more varied and complex set of questions as it relates to speech. So if SB 249 has "unconstitutional applications"—and, to be sure, it does not—the Court should "handle" them "as [it] usually do[es]—case-

by-case." *Hansen*, 599 U.S. at 770. This approach respects both the limits of the judicial power and the authority of Kentucky's General Assembly to set public policy for the Commonwealth while also preserving courts' ability to consider targeted claims of the law's unconstitutionality on a case-by-case basis.[6]

## II.   SB 249 is also constitutional in its speech-related applications to Doe.

As discussed in Burlew's opening brief, the Court should vacate the district court's injunction solely because of the flaws in Doe's facial claim. But if the Court is inclined to proceed further, it should also find that Doe is unlikely to succeed on the merits of his constitutional claim as it relates to his speech-related uses of social media.

### A.   SB 249 is a disclosure requirement that receives exacting, or intermediate, scrutiny.

Doe tries to raise the level of scrutiny applicable to SB 249 by distinguishing the Supreme Court's disclosure-requirement precedents and pointing to other factors that he claims require heightened scrutiny. Neither strategy works.

**1.** As discussed in Burlew's opening brief at (27–32), SB 249 is a disclosure requirement that receives a form of intermediate scrutiny called exacting scrutiny. Doe

---

[6] Doe's argument (at 46) about SB 249's "retrospective operation" is an *ex post facto* claim in all but name. Doe did not raise such a claim in his complaint. And in any event, the Supreme Court has rejected challenges to the retroactive operation of other sex-registry laws. *Smith v. Doe*, 538 U.S. 84, 106 (2003) (holding that the "retroactive application" of Alaska's Sex Offender Registration Act "does not violate the *Ex Post Facto* Clause").

tries to get around the Supreme Court's disclosure-requirement precedents by arguing (at 23) that the Court "has drawn a distinction between disclosure requirements that are separated from the time of speech that can later be used to identify the speaker, and disclosure requirements that mandate speakers identify themselves to the public when they are speaking." He argues that the "former are disclosure requirements, the latter are not." But this argument misunderstands both SB 249 and the Supreme Court's cases.

Start with SB 249. Doe's argument that the law is not a disclosure requirement stems from a fundamental misunderstanding of its requirements. As discussed above, *supra* 7–8, the law does not require Doe to include his legal name in his social-media *username*. Nor does it require him to post his name every time he posts content. Instead, it requires that he display his name on any *account* he controls. This requirement, therefore, would be satisfied by displaying his legal name in his account profile. On many social-media platforms, profiles are publicly accessible but are not displayed every time a user posts. This is true, for example, on platforms such as Instagram, X, and Facebook. It is simply not true, therefore, that "SB 249 mandates contemporaneous identification" of one's name. Doe Br. 23. Under SB 249, social media users can check a user's profile to see if their legal name is displayed. But the name need not be disclosed as part of the user's speech.

16

For this reason, SB 249 is wholly different than the badge requirement addressed in *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999). There, the Supreme Court invalidated a Colorado law that required initiative-petition circulators to "wear an identification badge bearing the circulator's name." *Id.* at 186. The Court reasoned that this law "compel[led] personal name identification at the precise moment when the circulator's interest in anonymity is greatest," when he is talking face-to-face with someone. *Id.* at 199. But as discussed above, SB 249 does not require Doe to disclose his name as he is speaking virtually. To be sure, his name would be publicly available on his account. But this is different from the contemporaneous and simultaneous in-person disclosure required in *Buckley*. For this reason, Burlew's analogy to sex-registration statutes holds over Doe's objections (at 21 n.5). Like the sex-registration statute, SB 249 gives Kentuckians the ability to easily look up a child sex offenders' identity without requiring the sex offender to identify themselves at the moment they speak or, as for sex-registry laws, place a physical sign at their home.[7]

---

[7] Doe's cases (at 21 n.5) about carrying identification cards or posting physical signs are inapposite. He cites two cases invalidating laws requiring sex offenders to carry branded identification cards that said, "SEX OFFENDER," *State v. Hill*, 341 So. 3d 539, 542 (La. 2020), and "CRIMINAL SEX OFFENDER," *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1318 (M.D. Ala. 2019). He also cites two cases requiring sex offenders to display signs at their homes on Halloween that said, "NO TRICK-OR-TREAT AT THIS ADDRESS," *McClendon v. Long*, 22 F.4th 1330, 1332 (11th Cir. 2022), and "No candy or treats at this residence," *Sanderson v. Bailey*, --- F. Supp. 3d ---, 2024 WL 4368822, at *1 (E.D. Mo. Oct. 2, 2024). These cases held such requirements were unconstitutional compelled speech. But Doe does not raise a compelled-speech argument here, and instead relies solely on his alleged right to anonymous speech.

17

The lack of a requirement for contemporaneous disclosure with speech is not the only difference between this case and *Buckley*. It is also significant that *Buckley* dealt with a law regulating face-to-face speech on core political issues. *Buckley*, 525 U.S. at 199–200. Unlike online speech on social media, individuals engaged in face-to-face speech necessarily "reveal[] their physical identities," *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 167 (2002), thus making the added requirement to disclose one's name even more burdensome. *Buckley* also cast doubt on the state's interest in publicly identifying petition circulators, but Doe has not questioned the Commonwealth's interest here. *Buckley*, 525 U.S. at 199–200.

SB 249 also differs from the law addressed in *Watchtower*, which barred all door-to-door advocacy without prior registration. 536 U.S. at 153. Like *Buckley*, this was a regulation of face-to-face communications. And the Court "emphasi[zed] . . . the important role that door-to-door canvassing and pamphleteering" in particular "has played in our constitutional tradition of free and open discussion." *Id.* at 162. The plaintiffs were also Jehovah's Witnesses, so the Court paid special attention to the religious rights at stake. *Id.* at 160–62.[8]

---

[8] Like *Buckley* and *Watchtower*, the challenged law in *Talley v. California*, 362 U.S. 60 (1960), applied to the more sensitive context of face-to-face communication. Specifically, it banned the distribution of *all* anonymous handbills by *all* people. This law was also much broader than SB 249, which applies only to child predators.

18

Even if this case were on all fours with *Buckley*, however, that would not change the level of scrutiny. *Buckley* refused to apply strict scrutiny to the name-badge requirement. 525 U.S. at 214–15 (Thomas, J., concurring in the judgment) ("I would apply strict scrutiny to each of the challenged restrictions . . . . As the majority would apply different reasoning, I concur only in the Court's judgment."). And *Buckley* involved the same type of disclosure—one's name—but in a context in which the disclosure was far more burdensome—a name badge worn during face-to-face communications on core political speech. So if the Supreme Court did not apply strict scrutiny even in *Buckley*, there is no reason to apply it here.

**2.** Doe is also wrong to argue (at 19) that cases involving disclosure requirements in connection with political contributions compel heightened scrutiny.

In *Buckley v. Valeo*, 424 U.S. 1 (1976), the Supreme Court applied "exacting scrutiny," not strict scrutiny, to a disclosure requirement for political contributions. This is the same standard for which Burlew advocates (at 27–28). It requires a "'relevant correlation' or 'substantial relation' between the governmental interest and the information required to be disclosed." *Id.* at 64. And in *Buckley*, the Court upheld the disclosure requirement because "the substantial public interest in disclosure . . . outweigh[ed] the harm generally alleged." *Id.* at 72.

In *Brown v. Socialist Workers '74 Campaign Committee (Ohio)*, 459 U.S. 87 (1982), the Supreme Court addressed an as-applied challenge to Ohio's campaign-contribution

19

disclosure law brought by a minor political party, the Socialist Workers Party. But the Court cited *Valeo*'s "substantial relation" test—*i.e.*, exacting scrutiny—as the relevant level of scrutiny. *Id.* at 92. The Court sustained the challenge under that standard, noting that the "District Court found 'substantial evidence of both governmental and private hostility toward and harassment of SWP members and supporters.'" *Id.* at 98–99 (quoting district court opinion). And it held that this record evidence "establishe[d] a reasonable probability that disclosing the names of contributors and recipients will subject them to threats, harassment, and reprisals." *Id.* at 100.

What do these cases teach for this case? First, that compelled disclosure of one's identity, even when incidental to core political speech, is not per se unconstitutional. Nor does it receive strict scrutiny. Instead, such requirements are analyzed under exacting scrutiny, which requires only a substantial relation between the government interest in the disclosure. And second, these cases are highly fact specific. An as-applied challenge may succeed if the plaintiff can produce evidence that the disclosure requirement would subject him to threats or harassment or would otherwise chill speech. But that requires concrete, record evidence. And a facial challenge is of course even more demanding.

**3.** Doe makes several other attempts to ratchet up the level of scrutiny on SB 249. All lack merit.

*First*, Doe repeatedly refers (at 6, 10, 11, 14, 18, 19, 21, 22, 23, 56) to child sex offenders as "unpopular," a "disfavored group," or a "uniquely despised group." But he does not grapple with this Court's precedent, cited by Burlew (at 32), holding that "[c]onvicted sex offenders are not a suspect class" that receive heightened scrutiny. *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999). And neither of his cases—*Brown v. Socialist Workers '74 Campaign Committee (Ohio)*, 459 U.S. 87 (1982), and *Lamont v. Postmaster General*, 381 U.S. 301 (1965)—involved laws that classify on the basis of sex offenders.

*Second*, Doe argues (at 24) that SB 249 deserves strict scrutiny because it requires the disclosure of one's name. But as discussed above, the Supreme Court did not apply strict scrutiny to the far more burdensome name-badge law in *Buckley*. Doe's authority for this argument is essentially a single sentence in *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 345 (1995), that he claims (at 25) "lower courts" have interpreted to mean that "laws requiring disclosure of one's identity in connection with speech-like SB 249-[are] a content-based restriction on speech." The "lower courts" that Doe cites? One out-of-circuit district-court case and a Virginia state-court case. *See ACLU v. Miller*, 977 F. Supp. 1228 (N.D. Ga. 1997); *Jaynes v. Commonwealth*, 666 S.E.2d 303 (Va. 2008). In its strongest form, therefore, Doe's argument is that this issue has not been decided by this Court. But the Supreme Court has already weighed in: disclosure requirements— even for one's name—do not receive strict scrutiny.

21

*Third*, Doe does not dispute Burlew's contention (at 28) that SB 249 was not enacted because of a disagreement with any message that child sex offenders convey. Instead, he argues (at 24) that "government disagreement" with speech "is not the *sine qua non* of content-based regulation." This is semantics. Even if the Supreme Court has not called government disagreement the *sine qua non* of determining content neutrality, the Court has called it the "the controlling consideration." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). So because SB 249 is not content based on its face and because it was not enacted "because of disagreement with [any] message" that child sex offenders "convey[]," the law is not subject to strict scrutiny. *Hill v. Colorado*, 530 U.S. 703, 711 (2000).

*Fourth*, restrictions on the ability speak anonymously do not necessarily receive strict scrutiny. Doe mischaracterizes (at 22) Burlew as arguing that "there is no right to anonymous speech." But Burlew was careful to explain (at 29) that there is no *freestanding* right to anonymous speech. That does not mean that restrictions on anonymous speech never raise First Amendment problems. They can and sometimes do. But such restrictions are not per se First Amendment violations. And any restrictions here are not so burdensome and so disconnected from a compelling government interest to infringe upon the freedom of speech.

**B.    Doe concedes that the Commonwealth has a compelling interest in enacting SB 249.**

Doe does not dispute that Kentucky invoked a compelling governmental interest in enacting SB 249. He admits (at 29) that "[w]ithout a doubt, the legitimate sweep of SB 249 is in preventing crime," (at 33) that "Kentucky has an interest in protecting children online," and (at 42) that the "protection of children is a compelling government interest." *See also* Doe Br. 56 ("Nor does [Doe] suggest that the interest of Mr. Burlew and the Commonwealth in protecting the public . . . is anything but legitimate and laudable.").

To be sure, Doe disputes (at 43–45) the Supreme Court's, and other courts', claims about recidivism for sex offenders. He even goes so far as to say (at 45) that, in his view, SB 249 may make recidivism *more* likely. But Burlew made these observations about recidivism rates for sex offenders in the context of his argument about the Commonwealth's compelling interest in enacting SB 249. Because Doe concedes that the Commonwealth in fact has a compelling interest, the legal purpose of Doe's quibbling with the data on recidivism rates is unclear. In any event, *McKune*'s statement about recidivism rates has been confirmed by more recent date from the Department of Justice. *See* Alper & Durose, *Recidivism of Sex Offenders Released from State Prison: A 9-Year Follow-Up (2005-14),* Bureau of Justice Statistics (May 2019), https://tinyurl.com/bdhxrhwh ("Rape and sexual assault offenders . . . were more likely than other released prisoners to be arrested for rape or sexual assault.").

There being no dispute about the Commonwealth's interest, the only remaining question is about SB 249's connection to that interest.

### C.    SB 249 furthers this interest and is narrowly tailored.

Doe fails to rebut Burlew's showing that SB 249 furthers the government's interest in protecting children from sexual abuse.

**1.** Doe starts by comparing this case to *Packingham*, arguing (at 26) that there is no "constitutional distinction" between SB 249 and the law there. Not true. *Packingham* "foreclose[d] access to social media altogether" by all registered sex offenders in North Carolina. 582 U.S. at 108. So this law didn't just burden speech, it banned all of it on social media. Doe's slippery-slope argument (at 36 n.11)—that accepting Burlew's position would somehow lead to a ban on social-media use for sex offenders who do not post content—is therefore untenable in light of *Packingham*.[9]

**2.** Doe also relies on several cases involving laws requiring registered sex offenders to disclose to the government their internet identifiers—*i.e.*, any name that one uses as identification on the internet, such as an email address, social-media username, and the like. But these out-of-circuit cases are not nearly as persuasive as Doe claims they are.

---

[9] Doe also cites (at 26) *Sorrell v. IMS Health*, which provides that "*content-based* burdens must satisfy the same rigorous scrutiny as its *content-based* bans." 564 U.S. 552, 566 (2011) (emphases added). But as discussed above, SB 249 is not a content-based law.

Doe argues (at 20) that "of the courts that have considered the anonymous speech rights of SORA registrants, none has agreed with" Burlew. But this is not so. One of Doe's cases rejected the plaintiffs' facial First Amendment challenge. The court noted that, as here, "the factual record before the Court only identifie[d] the effects that [SORA's] internet identifier reporting requirements have had on Plaintiff." *Doe #1 v. Lee*, 518 F. Supp. 3d 1157, 1209 (M.D. Tenn. 2021) (quoting *Doe v. Rausch*, 461 F. Supp. 3d 747, 771 (E.D. Tenn. 2020)). The plaintiffs therefore failed to meet the demanding standard for a facial challenge. *See id.* at 1216 ("Plaintiffs have similarly provided no concrete evidence (or even argument) regarding the chilling effect of SORA that would constitute a facially unconstitutional chilling effect."). Another district court in Tennessee rejected another facial First Amendment challenge to the same law. *See Rausch*, 461 F. Supp. 3d at 769. And the Tenth Circuit likewise upheld the challenged law in *Doe v. Shurtleff*, 628 F.3d 1217 (10th Cir. 2010).

To be sure, several other cases held that the challenged internet-identifier laws were unconstitutional. *See Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014); *Cornelio v. Connecticut*, 691 F. Supp. 3d 529 (D. Conn. 2023); *White v. Baker*, 696 F.Supp.2d 1289 (N.D. Ga. 2010); *Coppolino v. Noonan*, 102 A.3d 1254 (Pa. Comm. Ct. 2014). But in addition to being non-binding precedents, these cases involved laws distinguishable from SB 249 in key respects. First, these laws (as well as the laws in *Lee* and *Shurtleff*) applied to *all* sex offenders. SB 249 is far more tailored, as it applies only to registered

sex offenders who have committed a criminal offense against a minor. And second, these disclosure requirements were not limited to social media, but instead required the disclosure of identifiers across the internet, including email addresses and usernames from news sites, among others. *E.g.*, *Harris*, 772 F.3d at 582 (noting that the law would have applied if "for example a sex offender establishes a username on a news outlet's website for purposes of posting comments to news articles"); *Cornelio*, 691 F. Supp. 3d at 544 (noting that the law applies to non-social-media websites "such as Amazon.com, the Washington Post, and WebMD"). Because SB 249 is far more tailored than these laws, these decisions would not control even if they were rendered by this Court.

**3.** Doe raises several other challenges to Burlew's arguments that SB 249 furthers the Commonwealth's interests. But none warrant affirming the district court's order.

Doe argues (at 42–43) that most sex offenses are committed by first-time offenders. But the fact that SB 249 allows parents to identify some, but not all, potential child predators does not mean the law is unconstitutional. As is, the law still furthers the Commonwealth's interests in protecting children from sexual abuse and thus satisfies exacting scrutiny.

Doe further argues (at 43) that "SB 249 provides parents a false sense of security that their children are safe online." But that SB 249 does not fully solve the problem of predators preying on children online does not make the law unconstitutional. In any event, Burlew has no illusions that SB 249 will put parents completely at ease about

children using the internet. But it does give them an important tool to allow their children to enjoy the benefits of social media.

Doe argues (at 45–46) that the District of Connecticut found Connecticut's internet-identifier law to be ineffective. But *Cornelio* addressed a law with significant differences from SB 249. *See supra* at 25–26. The law had also been in place for 15 years. *Cornelio*, 691 F. Supp. 3d at 543. And the parties developed a record of how it had not been used to solve sex crimes. *Id.* Here, by contrast, Doe simply speculates that SB 249 will be ineffective.

Doe argues (at 48) that the General Assembly could have drafted SB 249 differently. But because strict scrutiny does not apply here, the law need not be the least restrictive means of achieving the government's interest.

Doe argues (at 29) that SB 249 is unnecessary because "the ills that SB 249 seeks to prevent are already crimes." But it is common sense that someone is more likely to commit a crime when they can do so anonymously than when their identity cannot be shielded. *See, e.g.*, *United States v. Dotson*, 324 F.3d 256, 260 (4th Cir. 2003) ("[T]he Internet provides an 'ominous method' for anonymous predatory criminal conduct."); *United States v. Weisser*, 417 F.3d 336, 349 (2d Cir. 2005) (same). Doe suggests that the Commonwealth should just increase the penalties for sex crimes against minors. But that misses the point. There are already serious penalties for these crimes, yet the crimes persist. With SB 249, the General Assembly acknowledged the continuance of these

crimes despite the serious penalties for them and gave parents a tool to prevent them from happening in the first place.[10]

Doe questions (at 31) whether any parent would use SB 249 to protect their children. The Commonwealth emphatically rejects the notion that the "existence of such a parent" who keeps careful watch over their children's social-media use "strains credulity." Parents can, and do, monitor who interacts with their children on social media. *See, e.g.*, Katherine Blunt, *The Influencer Is a Young Teenage Girl. The Audience is 92% Adult Men*, Wall Street Journal (June 15, 2024), https://tinyurl.com/3hd9j7b6 ("Sometimes the mom spent two to four hours a day blocking users or deleting inappropriate comments [on her daughter's Instagram account].").  This doesn't just include who *speaks* to them via direct messages and the like. But can also include who *follows* or *views* their children's accounts and content. Or even who is in the same group that their children are in.

Parents do not need to "run background checks" in order to benefit from the protections afforded by SB 249. Doe Br. 31. If they notice an account that includes what appears to be one's legal name has interacted with their child or is following their child's account, all they need to do is type that name into Kentucky's Sex Registry to

---

[10] The challenged law in *Doe v. Prosecutor* "prohibit[ed] most registered sex offenders from using social networking websites, instant messaging services, and chat programs." 705 F.3d 694, 695 (7th Cir. 2013). It was thus a total ban on social-media use, like the law addressed in *Packingham*, and is not anything like SB 249.

determine whether the individual is a registered sex offender. In this way, parents can identify possible threats to their children before someone has violated any law or even communicated directly with their child. It is not unreasonable to think that a parent would take these basic steps to protect their children from online child predators.

Doe also downplays (at 31–32) SB 249's benefits to law enforcement, stating that it will not deter anyone and that "law enforcement have techniques to pierce th[e] veil" "of anonymity" anyway. It's true that anonymity online doesn't always prevent law enforcement from catching predators. But a lack of complete anonymity on social-media for child sex offenders would certainly make law enforcement's job easier. And even if the lack of anonymity doesn't deter *every* future child sex offender, it is reasonable to conclude it will deter *some*, and perhaps *many*.

## III. The Court should not order the district court to expand the injunction to cover non-parties.

Doe filed a cross-appeal to ask this Court to expand the district court's injunction so that it applies state-wide to hundreds, and more likely thousands, of non-parties. *See* Doe Br. 3. The Court should reject what Doe himself acknowledges (at 56) is an "extreme" request. Even if Doe is entitled to a preliminary injunction, the district court did not abuse its discretion in limiting that injunction to the parties.

This Court's precedents foreclose an expansion of the injunction. A preliminary injunction must be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Commonwealth*, 57 F.4th at 557 (quoting *Califano v.*

*Yamasaki*, 442 U.S. 682, 702 (1979)). This means that "[a] court order that goes beyond the injuries of a particular plaintiff to enjoin government action against nonparties exceeds the norms of judicial power." *L. W.*, 73 F.4th at 415. This principle stems from Article III, which "confines the 'judicial power' to 'Cases' and 'Controversies,'" and therefore requires federal courts to issue relief "in a party-specific and injury-focused manner" rather than through "advisory opinions." *Id.* (quoting U.S. Const. art. III, § 2).

Burlew agrees with Doe (at 54) that this "Court's decision in *L.W.* . . . is instructive," just not for the reasons Doe thinks. Doe argues (at 55) that the "facial nature of the constitutional violation here," including that it "does not turn on speculation about third-parties," distinguishes this case from *L.W.* But *L.W.* also dealt with a facial challenge to a state law. This Court recognized that the facial nature of the plaintiffs' claims did not mean that the district court could "prohibit[] Tennessee from enforcing the law against the nine challengers in this case *and* against the other seven million residents of the Volunteer State." *L.W.*, 73 F.4th at 415. The upshot is that even if a plaintiff brings a facial *claim*, any injunctive *relief* must still "operate in a party-specific and injury-focused manner." *Id.*

Here, the district court's injunction provides Doe complete preliminary relief. Doe's operative complaint alleges that SB 249 burdens his right to speak anonymously on social-media platforms and is overbroad for the same reason. Am. Compl., R. 11, PageID#59–63. So in barring Burlew from enforcing SB 249 against Doe, the district

court provided full, preliminary relief from the First Amendment injuries Doe alleges. Any expansion of the injunction would cover injuries that Doe has not alleged in this lawsuit and that are allegedly imposed and suffered by unidentified individuals who are not parties to this litigation.

Doe acknowledges (at 51) that the "general rule is that injunctions should be no broader than necessary to afford relief to the parties." And he further notes (at 56) that "injunctions that extend beyond the parties are rare and extreme measures." But he argues that courts are "not prohibited" from granting universal injunctive relief, and that the Court should order the district court to enter such relief here. This Court has cast serious doubt on that premise. *L.W.*, 73 F.4th at 415 (noting that a "'rising chorus' suggests" that "the nature of the federal judicial power or for that matter Article III [does not] permit such sweeping relief"). And the case Doe cites *rejected* a class-wide injunction where the plaintiffs "never sought nor received class certification." *Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003) ("The injunction issued by the district court is overly broad in that the class wide focus is completely unnecessary to provide the named plaintiffs the relief to which they are entitled as prevailing parties."). Even if such relief were not strictly prohibited, that is no argument for saying the court *should* order that relief here.

Doe tries to fill this gap by arguing (at 51) that a statewide injunction is necessary to remedy SB 249's infringement on his right to receive information from other child

31

sex offenders on social media. But as he admits (at 51–52), he did not bring a "right-to-listen claim" in his complaint. Indeed, the motion panel already found as much. *See* CA6 R. 15-2 at 4 ("Doe did not raise his right to listen claim until his July 22 emergency motion."). This Court, therefore, cannot issue equitable relief to cure an injury that has not even been alleged. *See Commonwealth*, 57 F.4th at 556 (holding that courts "should not issue relief that extends further than necessary to remedy the plaintiff's injury"). In any event, even if Doe had brought a "right to listen" claim, he has made no attempt to provide a "concrete, specific connection to the speaker." *Murthy v. Missouri*, 603 U.S. 43, 75 (2024). His vague mention (at 51) of some unidentified number of allegedly "silence[d] voices" does not suffice.

Doe also asserts (at 52) that a statewide injunction is warranted because "*the law*" is unconstitutional. But courts "enjoin individuals tasked with enforcing laws, not the laws themselves." *Whole Women's Health*, 141 S. Ct. at 2495. Burlew is the only defendant in this case. So even if the Court held that the law is facially unconstitutional, it lacks the authority in this case to enjoin nonparties from enforcing it. *See L.W.*, 73 F.4th at 415.

At bottom, Doe urges the Court to treat this suit as if Doe managed to certify plaintiff and defendant classes. But as he admits (at 52), Doe "was unsuccessful" in this respect. And he did not seek to take an interlocutory appeal from the denial of class certification below. It matters not, therefore, that Doe *may* have been entitled to a

statewide injunction if he had been successful. He was not. In the district court, Doe acknowledged that absent class certification any "relief would only be binding on Defendant Burlew." Mot. for Class Cert., R.13, PageID#111–12. He was right below. Without these other plaintiffs and defendants joined as parties, the Court cannot enjoin non-party prosecutors from enforcing SB 249 against non-party child sex offenders. *See Sharpe*, 319 F.3d at 273.

Lastly, Doe bemoans (at 52) the lack of a state-wide official whom he could name as a defendant in this suit. But Kentucky's sovereign decision to structure its prosecutorial system to allow local prosecutors to enforce SB 249 is no reason to ignore black-letter law on party-specific relief and grant a state-wide injunction.

## CONCLUSION

For these reasons, this Court should vacate the preliminary injunction.

Respectfully submitted by,

*s/ John H. Heyburn*
Matthew F. Kuhn                                    Office of Kentucky Attorney General
 *Solicitor General*                               700 Capital Avenue, Suite 118
John H. Heyburn                                    Frankfort, Kentucky 40601
 *Principal Deputy Solicitor General*              (502) 696-5300
                                                   Matt.Kuhn@ky.gov
                                                   Jack.Heyburn@ky.gov

*Counsel for Appellant/Cross-Appellee*

33

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(g) and 6th Cir. R. 32, I certify that this brief complies with the type-volume limitation in Fed. R. App. P. 28.1(e)(2)(A) because it contains 8,479 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Garamond font using Microsoft Word.

*s/ John H. Heyburn*
*Counsel for Appellant/Cross-Appellee*

## CERTIFICATE OF SERVICE

I certify that on December 16, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ John H. Heyburn*
*Counsel for Appellant/Cross-Appellee*
